ESTATE OF CLARA EDGAR, DECEASED, CENTURY NATIONAL BANK & TRUST COMPANY, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1377–77.    Filed August 5, 1980.

*John M. Duff,* for the petitioner.
*Carmen J. Santamaria,* for the respondent.

OPINION

IRWIN, *Judge:* Respondent determined a deficiency in petitioner's estate tax of $28,074.21. Due to concessions, the only issue remaining for our consideration is whether petitioner is entitled to a charitable deduction for the value of the remainder interest of a trust which was bequeathed to qualifying institutions (within the meaning of sec. 2055(a)(2)).

All of the facts have been stipulated, and the stipulation of facts is incorporated herein by this reference. At the time the

petition was filed herein, Century National Bank & Trust Co., Executor of the Estate of Clara E. Edgar (hereafter estate), was a national banking corporation, organized under the laws of the United States and having its principal place of business at New Brighton, Pa.

By trust agreements dated August 29, 1961, Clara E. Edgar (hereafter sometimes referred to as decedent) and her sister, Jean Edgar Vaughan, created reciprocal revocable inter vivos trusts.

Pursuant to the terms of her trust agreement, decedent transferred stocks, bonds, notes, and other assets to the Union National Bank, as trustee.

According to the terms of decedent's trust agreement, the income of the trust was to be paid to her during her life. After her death, the income was to be paid to Jean Edgar Vaughan. The agreement provided that the trustee had the power, in its discretion, to "distribute to or apply for the benefit of the Donor, Clara E. Edgar, and her sister, Jean Edgar Vaughan, such amounts out of the principal of the trust estate held for said beneficiaries, as shall in the judgment of the trustee be necessitated by reason of illness or other emergency or inadequacy of the income, for the adequate support and the necessities of such beneficiaries." Upon the death of the survivor of the two sisters, the trust was to terminate. Several specific dispositions from the trust's principal were required, but the residue of the principal, and any accrued income, were to be poured over into Jean Edgar Vaughan's trust fund and be distributed "in accordance with the terms and conditions as in said Trust Agreement."

According to the terms of the Jean Edgar Vaughan Trust Agreement, the income of said trust was to be paid to Jean Edgar Vaughan. After her death, the income was to be paid to Clara E. Edgar. This trust agreement also contained the following provision:

The Trustee named may, from time to time, in its discretion distribute to or apply for the benefit of any beneficiary, from time to time, entitled to the receipt or application for his or her benefit of income hereunder, such amounts out of the principal of the trust estate held for such beneficiary, as shall in the judgment of the Trustee be necessitated by reason of illness or other emergency, or inadequacy of income, for the adequate support and the necessities of such beneficiary.

Upon the death of the survivor of the two sisters, the trust was to terminate. Several specific dispositions from the trust's principal were required, but the residue of the principal was placed in trust with the Union National Bank as trustee. The agreement further provided that from the net income of the latter trust, these would be paid during each of their lives: $75 per month to Harriet T. Norris; $100 per month to Anna M. Ott; $150 per month to Virginia I. Reinehr; and, by means of the supplement to the agreement of August 29, 1961, $50 per month to Martha Powers. The remaining income was to be distributed equally among several religious, educational, or charitable institutions, all of which qualified within the meaning of section 2055(a)(2).[1] The agreement provided that, as each of the four life beneficiaries died, her share of the income of the trust would pass to the institutions.

Jean Edgar Vaughan died on December 9, 1965.

Clara E. Edgar died testate on March 22, 1973. By decedent's last will and testament, dated April 21, 1966, she bequeathed the residue of her testamentary estate to the Jean Edgar Vaughan trust created by agreement of August 29, 1961, "for the uses and purposes set forth herein."[2] At the time of Clara Edgar's death, the Jean Vaughan trust fund's principal was valued at approximately $249,000. During 1973, the trust generated income of $13,149. The property previously transferred by decedent to the Clara E. Edgar trust had a value of $138,170.24 at the time of her death.

On December 30, 1975, petitioner applied to the Orphans Court Division of the Court of Common Pleas of Beaver County, Pa., seeking to obtain a construction of the Clara E. Edgar Will and Trust Agreement and the Jean Edgar Vaughan Trust Agreement. The court decreed, in pertinent part, as follows:

2. That paragraph of the Jean Edgar Vaughan trust created August 29, 1961, reading as follows, and thus incorporated by reference in the decedent's trust as set forth above:

"The Trustee named may, from time to time, in its discretion distribute to or

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

[2]Anna M. Ott predeceased Clara E. Edgar. However, Harriet T. Norris, Virginia I. Reinehr, and Martha Powers, named as income beneficiaries in the Jean Edgar Vaughan Trust Agreement, survived Clara E. Edgar.

apply for the benefit of any beneficiary, from time to time, entitled to the receipt or application for his or her benefit of income hereunder, such amounts out of the principal of the trust estate held for such beneficiary, as shall in the judgment of the Trustee be necessitated by reason of illness or other emergency, for inadequacy of the income, for the adequate support and the necessities of such beneficiary."

is hereby construed to apply only to the life estates reserved and/or granted to or for the benefit of Jean Edgar Vaughan and Clara E. Edgar, such reservation and/or grant being contained in the two paragraphs immediately preceding the principal invasion clause quoted above in full.

3. Following the deaths of Jean Edgar Vaughan on December 19,[3] 1965 and Clara Edgar on March 22, 1973 no beneficiaries of the decedent's trust had any interest in the principal thereof except the five named charitable beneficiaries, viz: Passavant Homes (Rochester), First Presbyterian Church (New Brighton), The Lighthouse (New Brighton), Hillsdale College and The Salvation Army (Beaver Falls Barracks).

4. Following the deaths of the above-named life tenants, the trustee neither had nor has any power to invade principal for the benefit of any beneficiary, specifically including the following annuitants or income beneficiaries: Hariett [sic] Townsend North, Anna M. Ott, Virginia Inman Reinehr and Martha Powers.

In its estate tax return, petitioner claimed as a charitable deduction under section 2055(a)(2) the entire net balance of the decedent's estate, amounting to $179,982.89. Petitioner has conceded that the correct amount should be $142,000.[4]

Respondent contends that the transfer in question is a split interest and subject to the provisions of section 2055(e) because interests in the same property (the income of the trust) passed both to qualifying institutions (within the meaning of sec. 2055(a)(2)) and to nonqualifying individuals. In such cases, no deduction is permitted unless, in the case of a remainder interest, the interest passes to a charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund, or, in the case of all other interest, the interest is in the form of a guaranteed annuity or is a fixed percentage, distributed yearly, of the fair market value of the property.

Petitioner argues to the contrary that the nonqualifying beneficiaries have no interest in the income of the trust and, therefore, section 2055(e)(2) does not apply to disallow the

[3]The parties stipulated that the date is Dec. 9, 1965.
[4]Net amount passing from decedent's estate less the value of the nonqualifying individuals' life estates in the trust income.

charitable deduction. This argument is based upon petitioner's contention that the trust fund created by Jean Edgar Vaughan will generate enough income to fully satisfy the income interests of the individual, noncharitable beneficiaries, and that decedent's residuary estate, considered as a separate trust, will, therefore, never be invaded for the benefit of the nonqualifying beneficiaries.[5] Petitioner points out that at the time of decedent's death, the Jean Vaughan trust was valued at $249,000 and generated income of $13,149 in 1973.

The essence of petitioner's argument, thus, is that where the economic facts concerning a transfer which provides for nonqualifying beneficiaries to receive a part interest in property are such that those beneficiaries will never receive any portion of that part interest, section 2055(e) is inapplicable. We disagree. Section 2055(e)(2) was enacted in 1969, effective with respect to decedents dying after December 31, 1969 (with certain exceptions, not here relevant), Pub. L. 91–172, sec. 201(d)(1), 83 Stat. 487, 549, in order to correct perceived abuses in the charitable contributions area. One of these abuses was the manner in which trust assets might be invested: for example, maximizing income interests by investing in high-income, high-risk assets, thus enhancing the value of the income interest but decreasing the value of the charity's remainder interest. To provide a closer correlation between the charitable contributions deduction and the ultimate benefit to charity, Congress provided rules which have to be met before a gift can qualify for a deduction. H. Rept. 91–413 (1969), 1969–3 C.B. 200, 237–239. Although this specific situation may not have been regarded as abusive by Congress when it enacted this legislation,[6] as petitioner contends, permit-

---

[5]The discretionary authority of the trustee to invade principal was held, in a county court proceeding, inapplicable after the death of decedent and her sister.

[6]We note, however, that the annual distribution from such a charitable remainder trust must be an amount equal to at least 5 percent of the value of the trust's assets in order to qualify as either a charitable remainder annuity trust or a charitable remainder unitrust. Sec. 664(d)(1) and (d)(2). This provision was enacted to prevent a charitable remainder trust from being used to circumvent the current income distribution requirement imposed on private foundations. S. Rept. 91–552 (1969), 1969–3 C.B. 481. In the absence of these rules, a charitable remainder trust could provide for a minimal payout to the noncharitable income beneficiary (substantially less than the amount of the trust income). Since the trust generally is exempt from income taxes, see sec. 664(c), this would allow it to accumulate trust income in excess of the payout requirement of the unitrust or annuity trust without tax for the future benefit of charity. It is not at all clear, therefore, that such a trust was not considered to be potentially abusive. This reason, alone, is sufficient to find that the trust fails to meet the remainder annuity trust

ting economic factors to be considered would directly contradict Congress' intent to establish specific rules in this area. It is clear that the trust document created, in legal terms, a remainder interest in favor of the charitable institutions. We hold that such an interest must in all events conform to the statutory requirements.

Petitioner apparently concedes that the trust fails to meet the statutory requirements set forth in sections 2055(e)(2)(A) (which are, in turn, set forth in secs. 664 and 642(c)(5)) and 2055(e)(2)(B).

In the alternative, petitioner contends that because the value of the annuitants' interests in the trust can be definitely ascertained and valued using the standard tables for valuing annuities, the trust qualifies under section 2055, relying on sec. 20.2055–2(a), Estate Tax Regs.

Prior to the enactment of section 2055(e)(2), a deduction was allowed for the charitable remainder in a trust created for private purposes if the remainder was readily ascertainable and hence severable from the noncharitable interest. Sec. 20.2055–2(a), Estate Tax Regs. *Henslee v. Union Planters National Bank & Trust Co.*, 335 U.S. 595 (1949), rehearing denied 336 U.S. 915 (1949); *Merchants National Bank of Boston v. Commissioner*, 320 U.S. 256 (1943). As stated above, however, the law in this area was changed for decedents dying after December 31, 1969, and the regulation upon which petitioner relies is, by its own terms, inapplicable to decedents dying after December 31, 1969.[7]

*Decision will be entered under Rule 155.*

---

requirements, sec. 664(d)(1), even if we were to consider the two trusts to be separate (although by its terms decedent's trust poured over to Jean Edgar Vaughan's trust). Sec. 664(d)(3), which provides an exception to the "5 percent" rule if certain requirements are met, is not applicable here.

[7]Sec. 20.2055–2 Transfers not exclusively for charitable purposes.

(a) *Remainders and similar interests.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest. *Thus, in the case of decedents dying before January 1, 1970, if money or property is placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay the principal to a charitable organization, the present value of the remainder is deductible. See paragraph (e) of this section for limitations applicable to decedents dying after December 31, 1969.* See paragraph (f) of this section for rules relating to valuation of partial interests in property passing for charitable purposes. [Emphasis added.]