James P. FLANAGAN, Administrator of
the Estate of Frank Parkes, Deceased,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 84–1629.

United States Court of Appeals,
Tenth Circuit.

Jan. 27, 1987.

Terry W. Tippens (James D. Fellers and Paul W. Dudman, also of Fellers, Snider, Blankenship, Bailey & Tippens with him on the brief), Oklahoma City, Okl., for plaintiff-appellant.

Michael L. Paup, Atty., Tax Div., Dept. of Justice (Glenn L. Archer, Jr., Asst. Atty. Gen., Dept. of Justice, Washington, D.C., and William S. Price, U.S. Atty., Oklahoma City, Okl., of counsel, with him on the brief), Washington, D.C., for defendant-appellee.

Before LOGAN, TACHA and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

James P. Flanagan, as administrator of the estate of Frank Parkes, appeals from the district court judgment denying his claim for a refund of federal estate taxes. He alleges that the Internal Revenue Service (IRS) wrongly refused to allow the estate a charitable deduction for property transferred to a charitable corporation. The sole issue on appeal is whether the IRS properly disallowed the deduction because the bequest was in the nature of a split interest transfer that did not qualify for the charitable deduction under any of the provisions of the Internal Revenue Code of 1954 (I.R.C.) § 2055, 26 U.S.C. § 2055.

The facts are essentially undisputed. Frank Parkes, an Oklahoma rancher and horseman with substantial oil and gas interests, died on April 21, 1976, leaving an estate valued in excess of $1,000,000. In April 1974, Parkes had executed an instrument denominated as a revocable living trust, which was witnessed and notarized as a will and contained testamentary provisions. The instrument provided that, upon

Parkes' death, the trustees were to make certain specific provisions for Parkes' nieces and nephews and a long-time employee. In addition, the document made the following provision for Parkes' sister, Nellie Davis:

"During my lifetime I have made contributions toward the comfort and support of my sister, Nellie Davis, and it is my desire and direction that the Trustee apply that portion of the net income or the principal of the Trust estate as the Trustee in the sole and uncontrolled discretion of the Trustee shall deem necessary and appropriate for the care, comfort and support of my said sister, Nellie Davis, during her lifetime."

R.I, 35. Finally, the document provided that the residue of trust principal and any accumulated income was to be used as follows:

"Subject to the foregoing, I direct that the Trustee hold and manage the Trust property in Trust for charitable, educational, and public uses or purposes as the Trustee may from time to time appoint, order or direct. The Trustee shall not be restricted in any way in their selection of the uses to which the Trust Fund and its income shall be applied, nor in the amounts or proportions in which such application shall be made. The Trustee may make, use, and apply the principal of the Trust in the same manner as the income therefrom. I do suggest that in order to effect my long cherished aim and purpose, the Trustee give primary consideration of use of the Trust for the purpose of the furtherance of high standards in horse breeding and training through the establishment of grants, loans, scholarships or other assistance in the founding, equipping or provision for the maintenance of institutions or associations whose purpose is the furtherance and advancement of horse breeding and training."

*Id.*

Immediately after Parkes' death, four named co-trustees filed an application in Oklahoma state court to administer the trust as specified in the 1974 document. Nellie Davis filed an objection to the trust proceeding and a petition for letters of administration, contesting the validity of the trust as a testamentary instrument and seeking distribution of Parkes' estate under the intestacy provisions of Oklahoma law. Parkes' other intestate heirs joined in this suit.

Following trial in Oklahoma state court but before that court issued any order of determination, the heirs and trustees executed a Stipulation and Settlement Agreement on December 29, 1976. Under the agreement, the Frank Parkes Foundation, Inc., a non-profit corporation under Oklahoma law qualified as an exempt charitable foundation under I.R.C. § 501(c)(3), was to hold certain specific properties valued at $355,145.54 [1] to carry out Parkes' original charitable intent. The remainder of the estate was to be distributed to the heirs in accordance with the intestacy provisions of Oklahoma law.

On January 20, 1977, the Oklahoma state court appointed James P. Flanagan, who had been one of the co-trustees, as administrator of Parkes' estate, to carry out the terms of the Stipulation and Settlement Agreement. The estate then filed its federal estate tax return on June 23, 1977, claiming a charitable deduction of $355,-145.54, representing the properties transferred to the foundation under the agreement. The Oklahoma state court entered a journal entry of judgment on June 29, 1977, approving and reflecting the terms of the agreement.

After audit, the IRS disallowed the claimed charitable deduction and assessed additional taxes which the estate paid under protest. After the IRS denied the estate's claim for refund, the administrator brought suit in the United States District Court for the Western District of Oklahoma. The district court held that the estate was not entitled to a charitable deduc-

---

1. There are valuation issues in this case that have been reserved for a later hearing in the event this court holds the estate is entitled to a charitable deduction.

tion under I.R.C. § 2055, and this appeal followed.

Section 2055(a) permits a deduction from a decedent's gross estate for the amount of "all bequests, legacies, devises, or transfers" to or for the use of a qualifying charitable corporation. I.R.C. § 2055(a)(2). Section 2055(e)(2), enacted as part of the Tax Reform Act of 1969, disallows the deduction whenever a split interest is involved that does not meet certain requirements.

A split interest transfer occurs whenever "an interest in property ... passes or has passed from the decedent to a person, or for a use, described in subsection (a), and an interest ... in the same property passes or has passed ... from the decedent to a person, or for a use, not described in subsection (a)." *Id.* § 2055(e)(2). If the qualifying charity receives a remainder interest, the deduction is not disallowed if the remainder interest is in a "charitable remainder annuity trust," a "charitable remainder unitrust," or a "pooled income fund." *Id.*

§ 2055(e)(2)(A). In the case of any other interest, the deduction is not disallowed if the charity receives a "guaranteed annuity" or "a fixed percentage distributed yearly of the fair market value of the property." *Id.* § 2055(e)(2)(B).

In addition to the § 2055(e)(2)(A) and (B) exceptions, Congress has enacted a series of savings provisions in § 2055(e)(3) applicable to wills and trusts executed or created before December 31, 1978.[2] Subsection (e)(3) permits the charitable deduction if the governing instrument is amended or conformed within a certain statutory period so that the charitable interest is in one of the forms specified in subsections (e)(2)(A) and (B). *Id.* § 2055(e)(3). The subsection also provides:

"If, by the due date for the filing of an estate tax return (including any extension thereof) ... the interest passes directly to a person or for a use described in subsection (a), a deduction shall be allowed as if the governing instrument

**2.** Section 2055(e)(3) as originally enacted in 1974 was applicable to estates of decedents dying after December 31, 1969, and to wills and trusts executed before September 21, 1974, and amended or conformed either on or before December 31, 1975, or on or before the thirtieth day after judicial proceedings begun on or before December 31, 1975. Act of October 26, 1974, Pub.L. No. 93–483 § 3, 88 Stat. 1457. Later amendments in 1976, 1978, and 1980, also applicable in the case of decedents dying after December 31, 1969, successively continued the period within which wills and trusts were covered to include wills and trusts executed or created before December 31, 1978, with amendment or conformity taking place before December 31, 1981. Act of October 4, 1976, Pub.L. No. 94–455 § 1304, 90 Stat. 1520, 1715–16; Act of November 6, 1978, Pub.L. No. 95–600 § 514, 92 Stat. 2763, 2883–84; Act of December 28, 1980 Pub.L. No. 96–605 § 301, 94 Stat. 3521, 3530–31. This is the statute applicable in the present case.

Congressional intent in enacting the savings provisions of § 2055(e)(3) in 1974 was explicitly equitable, to reduce the hardship to charitable recipients that otherwise would have been caused by the 1969 amendments. *Merchants National Bank v. United States,* 583 F.2d 19, 22 (1st Cir.1978). Congressional intent has remained firm with respect to the savings provisions:

"Congress, being aware of the technical, harsh and strict interpretations of this Section by

the Internal Revenue Service, passed an Act in 1978 permitting amendments to any Trust instrument to bring them into compliance with the technical language of this section and, each year since then, Congress has extended this saving legislation to Trusts of this nature."

*First National Bank of Fayetteville v. United States,* 82–2 U.S.Tax Cas. (CCH) ¶ 13,478 at 85,-638 (W.D.Ark.1982), *aff'd,* 727 F.2d 741 (8th Cir.1984).

An amendment in 1984 replaced subsection (e)(3) with a revised and permanent rule generally permitting reformation of charitable split interest trusts whenever either the instrument evidences an intent to comply with the 1969 Act rules or the reformation proceedings are begun before there is an opportunity for the IRS to audit the matter. Deficit Reduction Act of 1984, Pub.L. No. 98–369 § 1022(a), 98 Stat. 494, 1026–28; H.R.Rep. No. 432, 98th Cong., 2d Sess. 1516–17, *reprinted in* 1984 U.S.Code Cong. & Ad.News 697, 1156–57. New subsection (e)(3) does not govern the instant case. Pub.L. No. 98–369 § 1022(e), 98 Stat. 494, 1029. We note, however, that our resolution in favor of the administrator of the decedent's estate in the instant case is consistent with the continuing congressional intent to provide liberal savings provisions for charitable interests evinced in this most recent amendment of § 2055(e).

was amended or conformed under this paragraph."

*Id.*

The administrator does not contend that the charitable interest here qualifies within one of the § 2055(e)(2) exceptions but rather that there was no split interest transfer in the present case that would be subject to the provisions of § 2055(e). He contends that the charitable interest passed directly to the foundation pursuant to the Stipulation and Settlement Agreement that settled the lawsuit brought by Parkes' heirs. The administrator argues that since the interest passed directly with no intervening or simultaneous noncharitable interest in the same property, § 2055(e) is not applicable and the charitable deduction is allowable under § 2055(a)(2).[3]

The government contends, however, that the charitable interest is traceable to a nonqualifying split interest testamentary trust ineligible under § 2055(e)(2) for the charitable deduction. Citing Revenue Ruling 77–491, 1977–2 C.B. 332, the government further contends that the charitable deduction is not saved under § 2055(e)(3), because passage of property directly to the charity pursuant to the settlement of a will contest is considered to have resulted from a post-mortem will amendment forbidden by Temporary Treasury Regulation § 24.-1(h)(1), 26 C.F.R. § 24.1(h)(1) (1986). Finally, the government contends that even if the savings provision would be effective in this case, the interest failed to pass directly to the charity within the time limits specified by the statute.

In Revenue Ruling 78–152, 1978–1 C.B. 296, the IRS addressed the election of a widow who was the life beneficiary of her husband's estate under his will, with the remainder going to charity, to take her statutory share instead. It there took the position that

"the filing of the election to take against the will prevented the noncharitable interest from passing under the will. The property which passes from the decedent to the spouse by reason of the election, an absolute interest in fee, is not the same property that the charity takes under the will, also an absolute interest in fee. Thus, because of the surviving spouse's election, *M* Charity receives its interest in the estate immediately, interests in the same property do not pass from the decedent for both charitable and noncharitable purposes and section 2055(e)(2)(A) is not applicable. Accordingly, a charitable deduction is allowable for the value of the property actually passing to charity."

*Id.* at 297. In concluding that the nondeductible charitable remainder bequest was transformed into a fully deductible direct bequest, the IRS distinguished its earlier Revenue Ruling 77–491:

"This case is distinguishable from Rev. Rul. 77–491, 1977–2 C.B. 332, involving a charitable remainder interest that was accelerated due to the settlement of a will contest. . . .

The different results in the instant case and Rev.Rul. 77–491 are attributable to the different effects recognized for federal estate tax purposes of the spouse's election and the settlement agreement."

Rev.Rul. 78–152, 1978–1 C.B. at 297.

Revenue Ruling 77–491, 1977–2 C.B. 332, involved the settlement of a suit brought by the beneficiary of a life interest in the income from a trust under one will, challenging the validity of a subsequent will under which the same legatee had a fifteen-year interest in the same trust income. Under both wills, the remainder (or executory interest) went to charity. In settlement of the will contest, the legatee re-

---

**3.** Because we agree with this argument and find it dispositive, we need not reach the administrator's additional contentions: (1) that even if § 2055(e) applies, the deduction is available under the savings provisions of § 2055(e)(3); (2) that the Agreement of December 1976 terminated Davis' interest in or power to invade the property and therefore constituted a qualified disclaimer under § 2055(a), triggering the charitable deduction; and (3) that the possibility of invasion of the trust principal for support of Davis was so remote as to be negligible, thus making the charitable deduction available for the interest passing to charity.

ceived the present value of his interest under the later of the two wills, and the charity took its interest immediately. The IRS found an "outright charitable bequest [that] resulted from a post-mortem modification pursuant to a compromise agreement." *Id.* at 333. Although "this modification caused the charitable bequest to pass directly to the charitable beneficiary," *id.*, the IRS stated that the settlement was to be construed as a post-mortem amendment of a dispositive provision of the governing instrument, to which, by the terms of Temporary Treasury Regulation § 24.-1(h)(1), the savings provisions of § 2055(e)(3) were not applicable. Accordingly, the IRS concluded that "no deduction is allowed under section 2055(a) of the Code in respect of the property passing directly to the charity pursuant to the settlement agreement." Rev.Rul. 77–491, 1977–2 C.B. at 333.

■ We think the distinction the IRS seeks to make in these revenue rulings between the right of a spouse to elect against a will and the right of intestate heirs or legatees to challenge a will and, if successful, take in derogation of the will is a distinction without a difference. Both processes lead to post-mortem abrogation of dispositive provisions of a will. In both instances, the noncharitable interest does not pass under the will and there is no split interest transfer to which § 2055(e)(2) would apply. *Cf.* Rev.Rul. 78–152, 1978–1 C.B. at 297. We believe that the settle-

ment of a bona fide will contest is no more a post-mortem amendment of the will than a spouse's election.[4]

■ Revenue rulings are comparable to attorney general's opinions. They represent only the IRS's opinion of what the law requires, issued for the information and guidance of taxpayers, IRS officials, and others concerned. They do not have the force and effect of law, although they are entitled to consideration. They are accorded less weight than regulations, which are promulgated in accordance with the requirements of the Administrative Procedure Act and finalized only after a period for comment by concerned parties. *See Merchants Industrial Bank v. Commissioner,* 475 F.2d 1063, 1064 (10th Cir.1973). While the Supreme Court "has long recognized the primary authority of the IRS and its predecessors in construing the Internal Revenue Code," this authority must still be reviewed with regard to congressional intent. *Bob Jones University v. United States,* 461 U.S. 574, 596–97, 103 S.Ct. 2017, 2030–31, 76 L.Ed.2d 157 (1983).

In enacting the charitable deduction provisions in I.R.C. § 2055 and its predecessors, Congress sought to encourage gifts to charity. *Commissioner v. Estate of Sternberger,* 348 U.S. 187, 190 n. 3, 75 S.Ct. 229, 231 n. 3, 99 L.Ed. 246 (1955); *YMCA v. Davis,* 264 U.S. 47, 50, 44 S.Ct. 291, 292, 68 L.Ed. 558 (1924). We agree with the Seventh Circuit's formulation in

---

**4.** Even if we accept the government's technical distinction for estate tax treatment purposes between the results of the settlement of a will contest, described in Rev.Rul. 77–491, and the results of a spouse's election against a will, described in Rev.Rul. 78–152, Rev.Rul. 78–152, not Rev.Rul. 77–491, should control in the circumstances of this case. In Rev.Rul. 77–491, the claim to the decedent's estate was asserted under one or another will. Accordingly, the settlement of that claim conceivably might be construed as a post-mortem amendment of some testamentary instrument, resulting in a nondeductible direct bequest under Temp.Treas. Reg. § 24.1(h)(1), which we note states that it applies only to decedents who died before January 1, 1976. (Parkes died April 21, 1976.) In Rev.Rul. 78–152, the claim to the decedent's estate was asserted apart from and against the

will, a right conferred by statute to which the post-mortem amendment provision of Temp. Treas.Reg. § 24.1(h)(1) would have no application. The spouse's claim was statutory, not testamentary, in nature. In the case before us here, the claim to Parkes' estate is asserted apart from and against his alleged will by his sister and the other intestate heirs, under the state intestacy statutes. The filing and success of their claim prevented the noncharitable interest from passing under the will at all. *Cf.* Rev. Rul. 78–152, 1978–1 C.B. at 297. Accordingly, even had Parkes died before January 1, 1976, the settlement of the heirs' claim in the present case would not fall within the purview of Rev. Rul. 77–491, but rather would be governed by Rev.Rul. 78–152, and would result in a charitable deduction for the separate property interest passing distinctly and directly to charity.

*Norris v. Commissioner,* 134 F.2d 796 (7th Cir.), *cert. denied,* 320 U.S. 756, 64 S.Ct. 63, 88 L.Ed. 491 (1943), that congressional intent to prefer charitable gifts to estate taxes was "a case of absolute priority.... [While] loopholes should not be permitted to diminish estate tax payments by ostensibly charitable bequests which may never become effective," we cannot blindly resolve all doubts in favor of the IRS if we are to respect legislative intent to encourage gifts to charity. *Id.* at 801.

Section 2055(e)(2) was enacted in 1969 to eliminate an abuse of the charitable deduction through the split interest bequest. *See Oetting v. United States,* 712 F.2d 358, 360–61 (8th Cir.1983). Congress was concerned with situations in which a noncharitable beneficiary retained a substantial interest in the estate, and benefited from a charitable deduction for a remainder or other interest that was significantly disproportionate to the actual value ultimately received by the charity. *First National Bank of Fayetteville v. United States,* 727 F.2d 741, 748 (8th Cir.1984) (citing *Northern Trust Co. v. United States,* 78–1 U.S. Tax Cas. (CCH) ¶ 13,229 at 84,372 (N.D.Ill. 1977)); *Shriners' Hospital for Crippled Children v. United States,* 602 F.2d 302, 305 (Ct.Cl.1979).

This case involves none of the abuses of the charitable deduction that § 2055(e)(2) was enacted to eliminate. The exact properties constituting the charitable interest in this case are separately and fully enumerated in the Stipulation and Agreement resolving the dispute between the heirs and trustees in December 1976. The deduction is sought for the actual benefit passing to the charitable foundation. This is not a case in which a hypothetical future charitable interest exceeds the actual benefit to the charity. *Northern Trust Co.,* 78–1 U.S.Tax Cas. (CCH) ¶ 13,229 at 84,372; *cf. First National Bank of Fayetteville,* 727 F.2d at 748; *Oetting,* 712 F.2d at 363.

Accordingly, we hold that the amount taken outright by an otherwise qualified charitable corporation or for an otherwise

qualified charitable use pursuant to the settlement or compromise of a bona fide will contest qualifies for a charitable deduction under § 2055(a)(2). In such circumstances, there is no split interest transfer to which § 2055(e)(2) is applicable, and a charitable deduction under § 2055(a)(2) is allowable for the value of the property that actually passed directly to the charitable foundation.

REVERSED and REMANDED for further proceedings consistent herewith.