**ESTATE OF Joseph Givler STROCK, Dent Hazel Palframan and Pittsburgh National Bank, Co-Executors, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 85–2700.

United States District Court, W.D. Pennsylvania.

March 18, 1987.

Steven L. Sablowsky, Rothman, Gordon, Foreman & Groudine, Pittsburgh, Pa., for plaintiffs.

Henry Friedman, Atty. Gen., Dept. of Justice, Washington, D.C., and Craig McKay, Asst. U.S. Atty., for U.S.

## OPINION

COHILL, Chief Judge.

This case is presently before us on cross-motions for summary judgment. Oral arguments related to these motions were heard on January 5, 1987. Plaintiffs, by their underlying complaint, are seeking recovery of certain estate taxes which allegedly were erroneously and illegally assessed and collected. For the reasons set forth below, we will enter judgment in favor of plaintiffs and against defendant.

*Background*

The parties have stipulated to the relevant facts, a copy of this stipulation having been filed with the Court.

Joseph Givler Strock died testate on November 17, 1978. Mr. Strock's will was executed February 21, 1976. On November 22, 1978, the will was admitted to probate. Article 3 of the will left the residue of his estate in trust. This trust provided for a "split-interest" transfer whereby certain named life beneficiaries were to receive the major portion of the income from the trust for their lives, and upon the death of the survivor of the named life beneficiaries, the remainder was to be paid over to certain charities in designated amounts. Stip. ¶¶ 1, 2 and 4, and Ex. A.

On August 17, 1979, the Estate of Strock ("the Estate") filed a Form 706, United States Estate Tax Return, together with a remittance of $177,378.32. This Form 706 did not contain a claim for a charitable deduction. *Id.* at ¶¶ 5–6.

On December 31, 1981, the Estate filed a petition with the Orphan's Court Division of the Court of Common Pleas of Allegher County, Pennsylvania, seeking permission to reform Strock's will to conform to 26 U.S.C. § 2055(e). The charitable remainder trust created by the will was a "split-interest trust," which the Estate acknowledged did not qualify for a charitable deduction. *Id.* at ¶ 10, and Ex. C, at 7.

Also on December 31, 1981, the Orphan's Court issued a citation to all life beneficiaries and charitable organizations named in Strock's will to show cause why the trust created under Article 3 of the will should not be amended so as to conform with the requirements of Sections 664 and 2055(e) of the Code. *Id.,* Ex. C.

At a conference before the Orphan's Court, counsel for one life beneficiary and his three children contended that a paragraph had been left out of the will which would have dictated that upon the death of the last life beneficiary, the remaining principal would pass pursuant to the intestate law. Counsel for two of the charitable organizations named in the will contended that the Estate should be distributed in accordance with the will as written so that upon the death of the last life beneficiary, the principal would be distributed to the charities indicated. *Id.,* Ex. F, at 3.

On August 13, 1982, the Estate filed its Form 833, Claim for Refund and based its Claim for Refund upon its petition to amend the trust. *Id.,* at ¶ 12. It claimed a charitable deduction of $168,605.55 and sought a refund of $53,955.43.

On January 7, 1983, all parties in interest submitted to the Orphan's Court a Stipulation of Settlement whereby all the parties agreed to the following: the Executor of the Estate would pay the sum of $45,000 to the named charities in the will, and in consideration of the payments, the charitable organizations "shall release any and all claims they have to the Estate of Joseph Givler Strock, arising out of his Will, the trust created thereon, or otherwise." *Id.* at ¶ 14, and Ex. F, at 5.

The parties also agreed that the will would be construed so as to provide that on the death of the survivor of the named life income beneficiaries, the remaining princi-

pal of the trust would be distributed to Strock's issue *per stirpes. Id.,* Ex. F, at 6.

The Orphan's Court entered an Order on January 7, 1983, providing for the amendment of the will as set forth in the Stipulation of Settlement submitted to it. *Id.,* Ex. F.

As a result of an audit of the decedent's estate tax return, the Internal Revenue Service disallowed the charitable deduction on the ground that the distribution did not meet the statutory prerequisites of § 2055(e). The plaintiffs paid the estate tax deficiency and thereafter sought a refund of the disputed amounts from the Internal Revenue Service. After exhausting all administrative remedies, plaintiffs filed a complaint with this court seeking a tax refund of $14,850 as a result of the purported charitable deduction. Plaintiffs also seek a refund for legal fees they have incurred or will incur in bringing this refund suit.

Having read the briefs submitted by both sides to this dispute, it is apparent that the primary issue presented for resolution is whether § 2055(e) in fact applies to this case. The government asserts that the modification of Strock's will did not comport with the guidelines set forth in 26 U.S.C. § 2055(e)(3), which permits a deduction for otherwise non-deductible charitable bequests of remainder interests, provided the bequests are modified by amendment to conform with one of three permissible forms specified in § 2055(e)(2)(A).

Plaintiffs have argued in response to defendant's motion for summary judgment that § 2055(e) does not apply to the charitable bequests resulting from the Stipulation of Settlement with regard to Strock's will because the bequests passed directly to the charities and no longer as part of any form of split-interest trust. As such, plaintiffs contend that § 2055(a) governs this dispute and allows for a charitable deduction.

**1.** Section 2055(e)(3) was amended by the Deficit Reduction Act of 1984, but these amendments do not apply to the instant dispute. *See* Deficit Reduction Act of 1984, Pub.L. No. 98–369,

*Discussion*

**A. Deduction of the Charitable Bequests—The Applicability of § 2055(e)**

 Section 2055(a) generally provides for a deduction with respect to estate taxes where a direct bequest is made to a charitable corporation or fraternal association. On the other hand, § 2055(e) of the Code, as applicable to the Estate of Joseph Strock,[1] disallows deductions for charitable bequests of remainder interests which are not in one of three permissible forms (annuity trust, unitrust or pooled income fund) listed in § 2055(e)(2)(A). A relief provision, § 2055(e)(3), provides that non-deductible bequests can nevertheless qualify if modified by amendment within a certain time after the decedent's death into one of the three permissible forms specified in § 2055(e)(2)(A).

Section 2055(e) is the same as Section 201(d) of the Tax Reform Act of 1969, Pub.L. No. 91–172, 83 Stat. 487. Its purpose was to curb potential abuses attendant to the use of split-interest trusts with charitable remainders. Thus, where a bequest was made to one or more non-charitable beneficiaries for life or for a term of years, with an irrevocable remainder for the benefit of charity, an immediate substantial estate tax deduction often was available for the actuarial value of the remainder interest. The House Ways and Means Committee observed that the technique could be used to generate deductions which were in fact greatly overstated in comparison to what the charities would eventually receive, stating as follows:

> The rules ... for determining the amount of a charitable contribution deduction in the case of gifts of remainder interests in trust do not necessarily have any relation to the value of the benefit which the charity receives. This is because the trust assets may be invested in a manner so as to maximize the income interest with the result that there is little relation between the interest assump-

§ 1022(e)(1) 98 Stat. 1029 (Effective Date of 1984 Amendment), reprinted at 1984 U.S.Code Cong. & Ad.News 697, 1160.

tions used in calculating present values and the amount received by the charity. For example, the trust corpus can be invested in high-income, high-risk assets. This enhances the value of the income interest but decreases the value of the charity's remainder interest.

H.R.Rep. No. 91–413, 91st Cong., 1st Sess., pt. 1, at 58, *reprinted in* 1969 U.S.Code Cong. & Ad.News 1645, 1704.

To correct the abuses, § 2055(e)(2) provides that charitable remainder bequests will qualify for a deduction only if they are in the form of one of the three permissible forms of split-interest transfers specifically defined in the trust sections of the Internal Revenue Code.

In this case, the bequests to charity under the trust in Strock's will were not in any of these three permissible forms, either at the time the will was probated or after its modification pursuant to the Stipulation of Settlement and Order of Court. It is the defendant's contention that § 2055(e)(3) provides the only means by which any non-deductible bequest of a remainder interest to charity can be "saved." The government argues that since the Strock will originally contained a non-deductible split-interest trust, a charitable deduction could only be obtained by amending the trust to one of the trust forms outlined in § 2055(e)(2)(A). As no such amendment occurred, the government concludes that no deduction can be permitted.

Plaintiffs urge us to disregard § 2055(e) because the Stipulation of Settlement entered into by the parties removed any split-interest transfer from the will and caused the charitable interest to pass directly to the charities. As such, plaintiffs argue that § 2055(a) governs this case and provides a deduction for these direct transfers to charity. As the charities involved are qualifying organizations, Stip. ¶ 15, application of § 2055(a) would provide a charitable deduction. To this end, plaintiffs direct our attention to several decisions where § 2055(e) was found not applicable, and deductions were allowed for direct charitable bequests, notwithstanding the fact that

non-deductible split-interest trusts originally existed.

In *Northern Trust Co. v. United States*, 41 A.F.T.R.2d (P–H) 78–1523 (N.D.Ill.1977), a will had been probated which contained split-interest trusts. A subsequent will contest resulted in a settlement agreement and related judgment order pursuant to which the life beneficiaries under the split-interest trust received payments in lieu of life estates, and the remainder of the trust was distributed directly to several named charities.

The district court in *Northern Trust*, also faced with a conflict between § 2055(a) and § 2055(e), held as follows:

> The amount received by the charities pursuant to the settlement agreement passed by inheritance from the testator. Thus there is no intervening charitable interest; and the amount taken outright by the charities pursuant to the settlement should qualify for a deduction under Section 2055(a). The settlement did not create an interest split between charitable and noncharitable beneficiaries. Rather, each party took separately and directly under the agreement. Section 2055(e), which establishes special requirements for remainder interest passing from a decedent first to a noncharitable beneficiary, is inapplicable. (Citations omitted)

*Northern Trust*, 41 A.F.T.R.2d at 78–1524.

The Court of Appeals for the Eighth Circuit, relying on the *Northern Trust* decision, reached a similar conclusion in *Oetting v. United States*, 712 F.2d 358 (8th Cir.1983) and *First National Bank of Fayetteville v. United States*, 727 F.2d 741 (8th Cir.1984). In *Oetting*, the decedent's will created a split-interest trust to provide a life income to three elderly ladies with a remainder to five beneficiaries, four of which were qualified charities. Pursuant to a petition by the trustees and a subsequent court decree, the trustees were permitted to purchase annuities for the life beneficiaries. As a result, the transfer of the remainder owing to the charities became final, and a direct and immediate transfer to the charities took place. The

court, in allowing a deduction under § 2055(a)(2) noted that *Oetting* did not present any of the abuses which § 2055(e) was designed to prevent.

In *First National Bank*, the decedent's will established a split-interest trust for the benefit of the decedent's wife and a charitable foundation. This trust was modified, however, when the decedent's wife elected to take against the will. As a result, a subsequent settlement agreement and court decree provided that the estate would pay her a lump sum of $50,000 plus $600 per month during her lifetime. The estate remained open until decedent's wife died eleven months after her husband's death. Upon her death the remainder of the money originally designated for the split-interest trust was turned over to the charitable foundation, absent the lump sum and monthly payments made to decedent's wife. In effect, at the close of decedent's estate, the charitable foundation was the sole residual beneficiary of decedent's will. The circuit court, relying on *Oetting* and *Northern Trust*, found that § 2055(e) did not apply because the decedent's wife did not take under the will, but rather as the result of her election against the will, and therefore her non-charitable interest and the foundation's charitable interest were not in the same property. The court further noted that, as in *Oetting*, the non-charitable interest was capable of being measured and severed from the charitable property at the time the estate closed. She had received all of the money owing to her, and the remainder of the residuary property in the estate was not subject to any diversion for a non-charitable purpose. Consequently, none of the abuses were present which § 2055(e) was enacted to prevent.

We have also found, by our own research, a decision from the Court of Appeals for the Tenth Circuit in which similar reasoning was used again to find § 2055(e) inapplicable in an analogous situation. *See Estate of Parkes v. United States*, 810 F.2d 930 (10th Cir.1987), (citing *First National Bank* and *Oetting* and addressing the pre–1984 amendment form of § 2055). There, the validity of a split-interest trust

under decedent's will was challenged by one of decedent's heirs, and a subsequent stipulation, settlement agreement and court order eliminated the trust. As a result, a charitable foundation directly received certain properties valued at $355,-145.54 while the remainder of the estate was distributed to the heirs under applicable laws of intestacy. In a well-reasoned opinion, the circuit court held that § 2055(e) again was not applicable and that § 2055(a) did provide a charitable deduction. The court noted the charitable interest passed directly without any intervening or simultaneous noncharitable interest in the same property, and, as a result, the case involved none of the abuses which § 2055(e) was enacted to eliminate.

■ Both sides have also indicated several revenue rulings which support their respective positions. Plaintiffs have cited Revenue Rulings 83–20, 1983–1 C.B. 231, and 78–152, 1978–1 C.B. 296 the government argued that Revenue Ruling 77–491, 1977–2 C.B. 332 is directly on point (elimination of split-interest trust with non-deductible charitable interest pursuant to will contest and settlement did not remove charitable interest from requirements of § 2055(e) and charitable interest ruled non-deductible). Without fully discussing these rulings and the distinction which the parties have attempted to draw, we note that we have considered them and find that while informative, they do not present binding authority. We agree with the court in *Estate of Parkes* which was also confronted with these conflicting rulings and observed:

> Revenue rulings are comparable to attorney general's opinions. They represent only the IRS's opinion of what the law requires, issued for the information and guidance of taxpayers, IRS officials, and others concerned. They do not have the force and effect of law, although they are entitled to consideration. They are accorded less weight than regulations, which are promulgated in accordance with the requirements of the Administrative Procedure Act and finalized only after a period for comment by concerned

parties. *See Merchants Industrial Bank v. Commissioner,* 475 F.2d 1063, 1064 (10th Cir.1973). While the Supreme Court "has long recognized the primary authority of the IRS and its predecessors in construing the Internal Revenue Code," this authority must still be reviewed with regard to congressional intent. *Bob Jones University v. United States,* 461 U.S. 574, 596–97, 103 S.Ct. 2017, 2030–31, 76 L.Ed.2d 157 (1983).

*Estate of Parkes,* 810 F.2d at 934.

Looking to congressional intent, the Tenth Circuit Court of Appeals continued:

> In enacting the charitable deduction provisions in I.R.C. § 2055 and its predecessors, Congress sought to encourage gifts to charity. *Commissioner v. Estate of Sternberger,* 348 U.S. 187, 190 n. 3 [75 S.Ct. 229, 231 n. 3, 99 L.Ed. 246] (1955); *YMCA v. Davis,* 264 U.S. 47, 50 [44 S.Ct. 291, 292, 68 L.Ed. 558] (1924). We agree with the Seventh Circuit's formulation in *Norris v. Commissioner,* 134 F.2d 796 (7th Cir.), *cert. denied,* 320 U.S. 756 [64 S.Ct. 63, 88 L.Ed. 450] (1943), that congressional intent to prefer charitable gifts to estate taxes was "a case of absolute priority.... [While] loopholes should not be permitted to diminish estate tax payments by ostensibly charitable bequests which may never become effective," we cannot blindly resolve all doubts in favor of the IRS, if we are to respect legislative intent to encourage gifts to charity. *Id.* at 801.
>
> Section 2055(e)(2) was enacted in 1969 to eliminate an abuse of the charitable deduction through the split interest bequest. *See Oetting v. United States,* 712 F.2d 358, 360–61 (8th Cir.1983). Congress was concerned with situations in which a noncharitable beneficiary retained a substantial interest in the estate, and benefited from a charitable deduction for a remainder or other interest that was significantly disproportionate to the actual value ultimately received by the charity. (citations omitted)
>
> This case involves none of the abuses of the charitable deduction that § 2055(e)(2) was enacted to eliminate. The exact properties constituting the charitable interest in this case are separately and fully enumerated in the Stipulation and Agreement.... The deduction is sought for the actual benefit passing to the charitable foundation. This is not a case in which a hypothetical future charitable interest exceeds the actual benefit to the charity. *Northern Trust Co.,* 78–1 U.S. Tax Cas. (CCH) ¶ 13,229 at 84,372; *cf. First National Bank of Fayetteville,* 727 F.2d at 748; *Oetting,* 712 F.2d at 363.
>
> Accordingly, we hold that the amount taken outright by an otherwise qualified charitable corporation for an otherwise qualified charitable use pursuant to the settlement or compromise of a bona fide will contest qualifies for a charitable deduction under § 2055(a)(2). In such circumstances, there is no split interest transfer to which § 2055(e)(2) is applicable, and a charitable deduction under § 2055(a)(2) is allowable for the value of the property that actually passed directly to the charitable foundation.

*Id.* at 934–35. We believe that the same reasoning and underlying congressional intent applies in the instant case as well. Stock's will was modified pursuant to a will contest and settlement and subsequent order of court. This settlement eliminated the split-interest trust and the non-charitable and charitable parties involved both received their interests directly. No attempt was made to preserve life and remainder aspects of these interests so that the exact interest passing to charity could not be determined. Consequently, the abuses which resulted in the enactment of § 2055(e) are not present in this case. Accordingly, insofar as the decisions in the *Estate of Parkes* and the earlier cases discussed are correct, plaintiffs would be similarly entitled to deduction here.

The government has attempted to counter this latter observation by attacking the reasoning of *Northern Trust, Oetting,* and *First National Bank.* The defendant contends that these cases are flawed because the respective courts did not give adequate consideration to Temporary Treasury Regulation § 24.1(h), 26 C.F.R. § 24.1(h)(1)

(1986). Treasury Reg. § 24.1(h)(1) provides that a will containing a split-interest can qualify for a charitable deduction if "[s]uch interest passes directly to a person in a use described in section 2055(a)," but that the provisions for relief from § 2055(e)(2) are not "satisfied as a result of the amendment of a dispositive provision of the governing instrument occurring since the date of death of deceased."

The government also directs us to a decision by the tax court which was affirmed by the Court of Appeals for the Third Circuit. In *Estate of Edgar v. Commissioner*, 74 T.C. 983 (1980), *aff'd* 676 F.2d 685 (3d Cir.1982), a trust had purchased annuities for its non-charitable life beneficiaries, and as a result the charitable beneficiary took a present, non-invadable interest along with its remainder interest in the corpus of the trust. The Tax Court rejected the argument that Section 2055(e) was not intended to cover that situation, stating:

> To provide a close correlation between the charitable contribution deduction and the ultimate benefit to charity, Congress provided rules which have to be met before a gift could qualify for a deduction. H.Rpt. 91–413 (1969) 1969–3 C.B. 237–239. *Although this specific situation may not have been regarded as abusive by Congress when enacting this legislation* (citation omitted), as [taxpayer] ... contends, *permitting economic factors to be considered would directly contradict Congress' intent to establish specific rules in this area.* It is clear that the trust document created, in legal terms, a remainder interest in favor of the charitable institutions. We hold that such an interest must in all events conform to the statutory requirements. (Emphasis added)

*Id.* at 987–88. The government argues, based on this language, that we should not rule § 2055(e) inapplicable because the present situation does not present any of the abuses Congress had in mind when enacting § 2055(e).

■ We believe that Treasury Reg. § 24(h)(1) and *Estate of Edgar* both present valid points, but it is our considered opinion that neither cast any doubt on the reasoning behind the opinions in *Northern Trust, Oetting, First National Bank*, or *Estate of Parkes*. We believe that the Treasury Regulation and the Tax Court opinion speak to situations where an attempt is made to skirt the requirements of § 2055(e). In fact, we believe that *Estate of Edgar* involves a proper application of the reasoning underlying Regulation § 24(h)(1). The plaintiff in *Estate of Edgar* sought to create a direct transfer to a charitable beneficiary by purchasing annuities for the life beneficiaries. Regulation § 24(h)(1) denies a charitable deducation in such case. It is our opinion that the deduction was properly denied as both the regulation and the case stand for the proposition that an estate concerned *solely* with gaining a deduction for remainder interests passing to charities under a split-interest trust can only obtain such a charitable deduction through *its own action* by complying with the relief provisions of § 2055(e)(3).

In the cases supporting plaintiffs' position an intervening factor occurred, which otherwise altered the terms of a will and eliminated the split-interest problem *before* an estate would have to use the relief provided in § 2055(e). These intervening factors included a will contest and subsequent settlement, a court petition based in part on concerns for fiduciary duty and a spousal election against a will. As such, these situations do not present an attempt by the estate to circumvent compliance with § 2055(e). Granted, the estates in those cases probably sought to restructure the respective wills so as to favor a charitable deduction under § 2055(a). However, we do not believe this to be a relevant consideration as the fact remains that the interests motivating the alterations were not *solely* concerned with obtaining a charitable deduction. Therefore, we find Treasury Regulation § 24(h)(1) and the *Estate of Edgar* to be distinguishable from *Estate of Parkes* and the prior related decisions. We also find that despite an initial attempt to resort to § 2055(e), the instant case is also distinguishable from the regulation and the court decision, as the subsequent

will contest and settlement concerning Strock's will places plaintiffs in the same position as the plaintiffs in *Estate of Parkes* and *Northern Trust.*

Because we believe that the line of cases for *Northern Trust* through *Estate of Parkes* reflect a proper analysis of the relationship between § 2055(a) and § 2055(e) in cases such as the one before us now, we accordingly will grant plaintiffs' motion for summary judgment, deny defendant's motion for summary judgment and direct that a judgment be in favor of plaintiffs and against defendant as to the estate taxes in question.

## B. Attorney's Fees

■ The government has argued in response to plaintiffs' motion for summary judgment on attorney's fees that plaintiffs' request is premature. As the defendant has indicated, our consideration of plaintiffs' request for attorney's fees includes determinations of whether plaintiffs have substantially prevailed and whether the position of the government was unreasonable. Because the government could not have argued the existence of these factors prior to this opinion we also believe plaintiffs' request to be premature and we will direct that the parties brief the issue of attorney's fees subsequent to their receipt of this opinion.

An appropriate order will issue.

## ORDER

AND NOW, to-wit, this 18th day of March, 1987, for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1) Plaintiffs' Motion for Summary Judgment with regard to the claimed charitable deduction be and hereby is GRANTED;

2) Defendant's Motion for Summary Judgment with regard to the claimed charitable deduction be and hereby is DENIED;

3) Judgment be and hereby is entered in favor of plaintiffs and against defendant for $14,850 plus interest; and

4) Plaintiffs' Motion for Summary Judgment with regard to attorney's fees be and hereby is DENIED without prejudice. Plaintiffs shall file a Memorandum in support of their position on or before April 6, 1987, and the defendant shall file a Responsive Memorandum on or before April 20, 1987.