**William J. OETTING, Executor of the Estate of Irma H. Dunmeyer, Deceased, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 82–1914.**

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1983.

Decided July 20, 1983.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Robert A. Bernstein, Douglas G. Coulter, Attys., Tax Division, Dept. of Justice, Washington, D.C., for appellee; Thomas E. Dittmeier, U.S. Atty., St. Louis, Mo., of counsel.

Gene M. Zafft, David V. Capes, Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., David P. Oetting, Brackman, Copeland, Oetting, Walther & Schmidt, Clayton, Mo., for appellant.

Before ARNOLD, Circuit Judge, and FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

ARNOLD, Circuit Judge.

This is a suit by the executor of an estate for a refund of estate taxes which were allegedly overpaid because the Commissioner wrongly refused to allow the estate a charitable deduction in the amount of $558,-207.92 for transfers made to four charitable organizations. The District Court, 544 F.Supp. 20, granted the government's motion for summary judgment, and the executor has appealed. We conclude, in part because of a revenue ruling which came after the trial court's opinion in this case, that the deduction should have been allowed, and therefore we reverse.

## I.

The facts of this case do not appear to be disputed in any genuine respect. The plaintiff, Mr. Oetting, is an attorney who was consulted by the late Mrs. Irma H. Dunmeyer in September 1972 regarding her need for a will and for a trustee to manage her affairs for the rest of her life. Mrs. Dunmeyer was advanced in years, and Mr. Oetting came to her home to discuss the matter. This discussion led Oetting to believe that Mrs. Dunmeyer, a widow with no children, had an estate consisting of her home and about $100,000 in notes and deeds of trust to real estate. Mrs. Dunmeyer had specific testamentary plans. She wanted her estate to benefit certain distant relatives, three elderly ladies who were her close friends, four charitable organizations, and another friend met through her late husband.

Mrs. Dunmeyer specifically wanted the three elderly ladies each to receive $100 per month for the rest of their lives. She was apparently content to leave the legal means of accomplishing this purpose to the judgment of her attorney. Mr. Oetting prepared for Mrs. Dunmeyer an inter vivos trust

and a pour-over will, which she executed on September 6, 1972. After certain specific bequests, the assets of her estate were to go to the already existing trust. St. Louis County National Bank was named as trustee to manage her affairs. She originally funded the trust with about $91,000 in notes and mortgages.

Mr. Oetting drafted the trust instrument with a view toward the size of the estate and creation of a fund sufficient to generate the $100 per month payments to Mrs. Dunmeyer's three elderly friends, all of whom were near or past their eightieth year.

Mrs. Dunmeyer fell ill on December 25, 1973, and a guardianship was established for her soon thereafter. She died on October 21, 1974. Upon her death, her executor discovered that the estate vastly exceeded his expectations, amounting to approximately $1,600,000.

The size of the Dunmeyer estate created immediate problems for the trustees under her will. Pursuant to the terms of the will and trust agreement, they divided the estate into two trusts, "A" and "B." Trust B is the subject of this litigation. This trust was created to pay $100 per month to each of the three elderly ladies so long as each lived. Any part of the trust income above this amount was to be divided equally among five remainder beneficiaries, four qualified charitable organizations [1], and an individual, Marilyn Holtman Fetters. By the terms of the trust agreement, this trust was to terminate upon the death of the last of the three elderly ladies, and the corpus was then to be distributed outright in equal parts to the five remainder beneficiaries.

The assets of trust B totaled about $700,-000, more than ten times what was expected by Mr. Oetting. Given the magnitude of the trust B assets, the trustees were concerned that they would breach their fiduciary duty to the remaindermen by holding $700,000 in trust for the sole purpose of generating $3,600 per year for three elderly

---

1. The charitable beneficiaries were the First Congregational Church of Clayton, Missouri; the Salvation Army; the General Protestant Children's Home, St. Louis County, Missouri; and Boys Town of Missouri, St. James, Missouri.

ladies.[2] The cost of administration of the trust, they asserted, would exceed this figure, and they would be open to a charge of unjust enrichment at the expense of the remainder beneficiaries. Moreover, this state of affairs had unpleasant estate-tax consequences under the Tax Reform Act of 1969, 26 U.S.C. § 2055(e), which disallowed the charitable deduction for so-called "split-interest" bequests, *i.e.,* those in which a present interest passes to a noncharitable beneficiary and a future interest passes to a charitable one, unless certain prescribed forms are followed. The trustees therefore petitioned the Circuit Court of St. Louis County for permission to use trust assets to purchase annuities for Mrs. Dunmeyer's three friends at a cost not to exceed $25,-000. They proposed then to distribute four-fifths of the assets of trust B to the four charitable beneficiaries immediately. The remaining one-fifth would, as provided in the trust, be held until the death of the last of the three elderly friends, with income paid to the remaining beneficiary, Marilyn Holtman Fetters, or her descendants *per stirpes.* When the last of the three ladies had passed away, the remainder would be distributed to Ms. Fetters or her descendants. The Circuit Court entered a decree on November 6, 1975, approving the trustees' proposed course of action, and the executor immediately transferred $558,-207.92 to the charities. Annuities were purchased for the three ladies for approximately $23,000, which guaranteed payment to each of them of $100 per month for the remainder of her life.

The executor filed an estate-tax return on January 12, 1976, which was within the period allowed by law, including extensions granted by the IRS. The return claimed a charitable deduction in the amount of $558,-207.92, the amount which had been transferred to the charitable beneficiaries. It reflected a net estate tax payable in the amount of $284,375.61, which was paid with the filing of the return. The IRS, upon audit of the return, disallowed the charita-

ble deduction. On December 29, 1978, the Service sent the executor a notice of deficiency in the amount of $263,266.96. On March 2, 1979, Mr. Oetting gave the government a check for that amount and, three weeks later, he sent a second check for interest in the amount of $66,595.81. The executor then filed this suit in the District Court seeking a refund of the alleged overpayment of taxes and interest. As noted above, the District Court granted the government's motion for summary judgment.

## II.

We agree with the District Court's assessment of the facts of the case. They do not appear to be controverted in any significant respect, and the case seems ripe for disposition as a matter of law. We disagree, however, with the trial court's legal conclusions. Our view of the law is, to some extent, influenced by a revenue ruling favorable to the taxpayer which post-dates the District Judge's opinion and which was therefore unavailable to him. Rev.Rul. 83–20.

## A.

Before discussing the parties' arguments, a few words about § 2055(e) are appropriate. This statute was enacted by Congress to eliminate an abuse of the charitable deduction through the so-called "split-interest bequest." Such a testamentary transfer involves the bequest of an interest in property to an individual with a simultaneous bequest of an interest in the same property going to a qualified charity. Often this is accomplished by giving the income interest in a trust to an individual for life, with the remainder to charity. An estate could, under pre-1969 law, claim a charitable deduction for the present value of the remainder, computed by using actuarial life-expectancy tables and an assumed interest rate. The abuse occurred, Congress found, because

---

**2.** The amount needed for this purpose would, of course, decrease as each of the three ladies

passed away.

"the rules for determining the amount of a charitable deduction in the case of gifts of remainder interests in trust do not necessarily have any relation to the value of the benefit which the charity receives." S.Rep. No. 552, 91st Cong., 1st Sess., *reprinted in* 1969 U.S.Code Cong. & Admin.News 2027, 2116. This was because the trust corpus could be invested in high-income, high-risk assets so as to increase the value of the income interest but decrease the value of the charity's remainder interest. The congressional response to this situation is contained in §§ 2055(e)(1) and (2), which disallow a charitable deduction for any split-interest bequest unless the remainder interest is in the form of a charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund. In this case it is undisputed that Trust B was neither an annuity trust, a unitrust, nor a pooled income fund. Moreover, the state court proceeding did not modify Trust B into any of these three forms, so as to allow it the benefit of the relief provision contained in § 2055(e)(3).

### B.

The executor argues first that § 2055(e) is simply not applicable to this case because the state court decree had the effect of changing what would have been a split-interest bequest into a direct transfer to charity. That is to say, after the purchase of the annuities the transfer of the remainder to the charities was an immediate one, deductible under 26 U.S.C. § 2055(a). Any intervening noncharitable interest was extinguished by the state-court decree. *Northern Trust Co. v. United States,* 41 A.F.T.R.2d 78–1523 (N.D.Ill.1977), is cited in support. That case held that the settlement of a will contest, under the terms of which "the life tenants received cash payments in lieu of life estates and the residuary [sic] was to be distributed to the charities," took the transaction out of the limitations of § 2055(e). The court relied on *Lyeth v. Hoey,* 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938), for its holding that the amounts received by the charities passed by inheritance from the testator. *Northern Trust Co.,* although not controlling authority, is clearly in point.

The government argues the case is distinguishable in that the settlement agreement represented a compromise of legitimately arguable rights of inheritance, while in the present case the state-court action was instituted gratuitously by the trustees for the sole purpose of avoiding the payment of estate taxes. This distinction mischaracterizes what the trustees did. No doubt they hoped that estate taxes could be reduced. But they allege that they instituted the action because failure to act would be a breach of their fiduciary obligations under state law not to enrich themselves at the expense of the trust's remainder beneficiaries. The government does not contest this allegation by affidavit or by legal citation. The trustees' actions to enforce or carry out their own fiduciary duties (which could, of course, have been the subject of a possible suit by the remaindermen) is legally equivalent to the enforcement of rights of inheritance recognized in *Northern Trust* and *Lyeth v. Hoey, supra.*

The District Court declined to follow *Northern Trust* because it relied on *Lyeth v. Hoey,* which, the court said, had not been followed in subsequent cases in the courts of appeals. See *Underwood v. United States,* 407 F.2d 608 (6th Cir.1969); *Bach v. McGinnes,* 333 F.2d 979 (3d Cir.1964); *Robbins v. Commissioner,* 111 F.2d 828 (1st Cir. 1940). These cases stress, correctly, that *Lyeth* was an income-tax case, not an estate-tax case. *Lyeth* held that money received by an heir in compromise of a will contest is not taxable as income, because it is within the income-tax exclusion for bequests and inheritances. The question whether a transfer is deductible for estate-tax purposes, it was said, is different, and a transfer that comes to a charity as a result of a compromise settlement, rather than directly from the decedent, is not deductible. Deductibility for estate-tax purposes, the argument runs, is irrevocably determined one way or the other on the day the testator dies. It cannot be affected by post-death events like suits and settlements.

The attempted distinction finds no support in the words of the relevant statutes. Section 102(a) of the Code provides that "[g]ross income does not include the value of property acquired by gift, bequest, devise, or inheritance." Section 2055(a)(2) allows a deduction for estate-tax purposes of "the amount of all bequests, legacies, devises, or transfers" to qualifying charities. It is hard to understand how a transfer could be a "bequest" or "devise" for one purpose but not for the other. Nevertheless, we understand the District Court's hesitancy to follow *Northern Trust,* a district-court opinion, in the face of three apparently inconsistent appellate opinions. We should feel the same reluctance, were it not for a recent revenue ruling that we find persuasive.

Revenue Ruling 83–20 was issued after the appellate briefs were filed in this case and was brought to our attention by counsel for the taxpayer the day before the oral argument. This Revenue Ruling, although not controlling authority, is persuasive. Under the facts presented in 83–20, the decedent's will had bequeathed the residue of his estate to Y, a charitable organization. Under the applicable state law, the surviving spouse, S, had been awarded an allowance for support, payable out of the residue, during the period of administration of the estate. The award was fixed by the Probate Court at an amount referred to in the Ruling as 5X dollars. (Thus, it was a post-death event—the order of the Probate Court—that fixed the extent of S's interest.) The allowance would terminate in the event of S's death or remarriage or upon completion of administration of the estate. Further, it was shown that in that jurisdiction there was a less than five per cent. probability that administration of the decedent's estate would extend more than five years beyond the date of his death. The question before the Service was whether the charitable deduction should be disallowed under § 2055(e)(2) because an interest in the residue had passed for charitable purposes and an interest in the same property had passed from the decedent to his spouse for noncharitable purposes.

The Service concluded that the deduction should be allowed. The allowance awarded to the spouse was payable out of the testator's residuary estate, so it would have been entirely plausible, and consistent with the position taken by the United States in the instant case, for the Service to conclude that no deduction should be allowed because both the spouse and the charity had an interest in the same property. The IRS rejected this conclusion, however, reasoning instead that the only property in which the spouse had an interest was that portion of the residuary estate equal to the maximum amount payable to her as an allowance for support. Her interest could not exceed 5X dollars $\times$ 12 months $\times$ 5 years, or 300X dollars. (The possibility that administration of the estate would take more than five years, a less than 5% chance, was considered negligible and was disregarded.) The reasoning of the Ruling continued as follows:

> That portion of the residuary estate certain to be received by charity (or not subject to diversion for a noncharitable purpose) is property in which no noncharitable interest exists and is therefore deductible and not a split interest. For that portion to be determined, however, the property in which [the spouse] has an interest (*i.e.,* the maximum possible amount of the widow's allowance) must be capable of being measured and severed from the solely charitable property in the residuary estate.... The property in the residuary estate certain to be received by charity is not a split interest
> ....

This interpretation fits the case before us.[3] Here, the only property in which a noncharitable interest exists, after the state-court decree, is the $23,000 used to purchase the three annuities. The remain-

---

**3.** The Supreme Court has recently emphasized the authority of the IRS's published revenue rulings. See *Bob Jones University v. United States,* —— U.S. ——, ——, 103 S.Ct. 2017, 2031, 76 L.Ed.2d 157 (1983).

der of the property is not subject to diversion for a noncharitable purpose. It is certain to be received by charities, and in fact has already been received by them. Indeed, the reasoning of Rev.Rul. 83–20 is more easily applicable to the facts of the present appeal than it was to the facts before the Service when the Ruling itself was issued, because here all contingencies have been completely eliminated. There, the deduction was allowed even though a remote contingency, the possibility that administration of the estate could extend more than five years beyond the death of the decedent, still existed.

When we questioned counsel for the government at the oral argument about Rev.Rul. 83–20, he produced another ruling, Rev.Rul. 83–45, issued about two months later. Counsel argued that after Rev.Rul. 83–45 little or nothing was left of Rev.Rul. 83–20. We do not believe that the Internal Revenue Service is quite so capricious as counsel for the United States would have us think. The Revenue Rulings are based, in our view, on significantly different situations. In Rev.Rul. 83–45, the testator's will had bequeathed certain stock to a charitable organization. During the administration of the estate, however, the executor was directed to retain the stock and pay dividends to a named individual. The executor claimed a deduction for the full value of the stock, but the deduction was disallowed. The Service concluded that because of the individual's income interest the bequest ran afoul of the split-interest prohibition of § 2055(e). Rev.Rul. 83–20 was not distinguished or overruled. Indeed, it was not even cited. Surely we are not to believe that a revenue ruling only two months old has been withdrawn or overruled *sub silentio.* Nor is such a conclusion logically necessary. The cases are readily distinguishable. In Rev.Rul. 83–45, the amount of the income interest, and therefore of the sum to be received by charity, was totally unpredictable. There was no indication what the dividends might be, and there was also no indication how long the estate might be

under administration. It could not be said, as it can be both in the Rev.Rul. 83–20 situation and in the instant appeal, that the amount to be received by charity was certain. We conclude that the reasoning of Rev.Rul. 83–20 is still intact, that it applies to the present case, and that it supports our conclusion, based on *Northern Trust* and *Lyeth v. Hoey,* that under the unusual facts of this case the $558,207.92 received by the charities passed to them from the decedent within the meaning of § 2055(a)(2) and therefore qualifies for the charitable deduction from the estate tax.

This case presents none of the abuses which § 2055(e) was designed to prevent, and the government concedes as much. A deduction is claimed only for those amounts that were actually received by the four charities. The deduction should be allowed.

The judgment is reversed, and the cause remanded for entry of judgment in favor of the taxpayer in whatever amount the District Court finds to be appropriate.[4]

It is so ordered.

---

4. Our disposition of this case makes it unnecessary to pass on the taxpayer's further argument that a deduction should be allowed under the relief provisions of § 2055(e)(3).