ESTATE OF GODFREY THOMAS, DECEASED, FIRST NATIONAL BANK, DEWITT, ARKANSAS, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Thomas v. Commissioner
Docket No. 8877-87.
United States Tax Court
T.C. Memo 1988-295; 1988 Tax Ct. Memo LEXIS 323; 55 T.C.M. (CCH) 1241; T.C.M. (RIA) 88295; July 11, 1988. Lewis H. Mathis, James E. Harris, and Walter M. Ebel III, for the petitioner. Edsel Ford Holman, Jr., for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: In his notice of deficiency, *325 respondent determined a deficiency of $ 540,812 in the Federal estate tax of the Estate of Godfrey Thomas. The sole issue presented for decision is whether petitioner is entitled to an estate tax charitable contribution deduction for the value of property that passed to a charitable foundation. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Background
Petitioner is the Estate of Godfrey Thomas. Godfrey Thomas ("Thomas") was a resident of Stuttgart, Arkansas, when he died on November 18, 1982. His will and its codicils were admitted to probate in an Arkansas state court on December 6, 1982. The First National Bank of DeWitt, Arkansas (the "Bank") was appointed to serve as both the executor of his estate and the trustee of all the trusts created by his will and its codicils. Before he died, Thomas had established the Godfrey Thomas Foundation, Inc. (the "Thomas Foundation"). That foundation is exempt from Federal income taxation under section 501(c)(3). [1]
*326 When he died, Thomas owned all of the issued and outstanding stock of Godfrey Thomas Farms, Inc. ("Thomas Farms, Inc."). That corporation owned and farmed 2,407 acres of farmland ("Thomas Farm"). Thomas left the stock in trust for the benefit of the following parties: Beneficiary
Share
Edna, Margaret, Carl, Johnnie, and
Mark Thomas, as tenants in common
1/2
Thomas Foundation
1/3
Elizabeth Yancey
1/6
Thomas directed the Bank to hold the stock, or the assets received in the event Thomas Farms, Inc. was liquidated, for 50 years. During that term, the beneficiaries were entitled to receive their respective shares of the net income from the trust at least annually. At the expiration of the 50-year term, the remainder of the trust was to be distributed outright to noncharitable beneficiaries. The Bank dissolved Thomas Farms, Inc. in 1983 and thereafter continued to operate Thomas Farm just as it had been operated before the dissolution. Petitioner timely filed its Federal estate tax return on January 11, 1984. It claimed a total of $ 708,788 of charitable deductions on the return. The $ 708,788 of charitable deductions included $ 703,788 for the *327 present value of the Thomas Foundation's 50-year beneficial interest in one-third of Thomas Farms, Inc. and $ 5,000 for a cash bequest to a church. Respondent audited petitioner's return and informally determined that petitioner had understood the value of Thomas Farms, Inc. Based on that determination, respondent increased petitioner's charitable deduction for the present value of the Thomas Foundation's interest in Thomas Farms, Inc. to $ 871,789. Respondent also reduced petitioner's charitable deduction for his contribution to the church to $ 2,856 due to the requirement that the donation be reduced by a share of petitioner's Federal estate tax. Petitioner agreed to these adjustments. Respondent then determined by notice of deficiency dated January 8, 1987, that petitioner was not entitled to a deduction for the present value of the Thomas Foundation's interest in Thomas Farms, Inc. Petitioner's deduction for his contribution to the church was therefore further reduced to $ 2,066 [2] to account for the additional estate tax allocable to that contribution as a result of the disallowance of the deduction for the Thomas Foundation's interest in Thomas Farms, Inc. *328 The Severance
Before 1987, Thomas Farm was considered to be owned by a single entity for purposes of the Federal farm price support program. Any one entity could receive a maximum of $ 50,000 of Federal farm price support payments. Until 1986, Thomas Farm never qualified for more than $ 50,000 of farm price support payments. In 1986, Thomas Farm qualified for approximately $ 55,000 of farm price support payments. Due, however, to the $ 50,000 limit on payments to a single entity, the Bank received only $ 50,000 to distribute to the beneficiaries of the trust that owned Thomas Farm. In 1987, the government instituted a "cross-compliance" program which for the first time required farms that participated in the price support program for one grain to also participate in the price support program for all the other grains grown on it. Although more than one type of grain had always been grown on Thomas Farm, the farm had previously participated only in the price support program for rice. These developments concerned Warren A. Jennings, the officer of the Bank who was directly responsible for managing Thomas Farm. By March of 1987, he could see that Thomas Farm was going to *329 qualify for over $ 61,000 of farm price support payments for 1987, and that more than $ 11,000 was therefore going to be lost due to the $ 50,000 limit. He could also foresee that, due to the cross-compliance program, Thomas Farm was going to qualify for even larger price support payments in future years. Jennings worried that the cumulative amount of income lost to the beneficiaries over the remaining term of the Thomas Trust due to the $ 50,000 limit would be over $ 1,000,000. He also feared that the $ 50,000 limit might be reduced, in which event the amount of income lost would be even larger. He consulted an attorney and spoke to other bank employees about what could be done to get an additional $ 50,000 limitation for Thomas Farm. He was advised that nothing could be done given the form of ownership of the farm. Jennings was approached at this point by petitioner's attorneys who had recently received the notice of deficiency disallowing petitioner's deduction for the Thomas Foundation's interest in Thomas Farm. The attorneys suggested to Jennings that the remaindermen's interest in the one-third of the Thomas Trust that benefitted the Thomas Foundation (the "charitable one-third *330 of the trust") be severed from the foundation's interest. The attorneys told Jennings that they believed that a severance could salvage petitioner's charitable deduction. They also told Jennings that they believed that a severance would only salvage the deduction if there was a significant nontax reason for the severance. Jennings told the attorneys that the severance would be advantageous for agricultural purposes also as it would create an additional entity, with its own $ 50,000 limit, to receive Federal farm price support payments. On March 25, 1987, the Bank, in the capacity of executor of petitioner, petitioned an Arkansas state chancery court to order the remainder interest in the charitable one-third of the trust to be severed from the Thomas Foundation's term interest by setting aside a fund representing the present value of the remainder interest. The petition also asked the court to direct the Bank to distribute the balance of the charitable one-third of the trust to the Thomas Foundation "outright in fee simple absolute." The court granted the petition and entered its order on April 6, 1987. Pursuant to the order, the Bank severed the remainder of the charitable one-third *331 of the trust from the balance of the one-third. It used $ 93,057.64 of cash from the one-third to fund the present value of the remainder interest by purchasing single premium endowment insurance policies. It transferred the property that comprised the balance of the charitable one-third of the trust, including among other things an undivided one-third interest in the land that made up Thomas Farm, to the Thomas Foundation in fee. Jennings later discovered that the date of the original order was too late to qualify the Thomas Foundation for a separate $ 50,000 limit on Federal farm price support payments for 1987. The cut-off date for such determinations was April 1, 1987. He therefore petitioned the court that issued the order to amend it by entering it nunc pro tunc March 25, 1987. The court granted the petition on September 30, 1987. OPINION The sole issue for decision is whether petitioner is entitled to an estate tax charitable contribution deduction for the value of the interest in Thomas Farm that passed to the Thomas Foundation. Section 2055(a) generally allows an estate *332 such as petitioner a deduction for the value of a transfer made to a charity such as the Thomas Foundation. Section 2055(e)(2) restricts such deductions, however, for property in which both charitable and noncharitable beneficiaries receive interests ("split-interest" transfers). When a charity is transferred an income interest in property and a noncharity is transferred the remainder, an estate is entitled to a deduction for the value of the income interest only if it is a guaranteed annuity or a fixed percentage of the fair market value of the property. Sec. 2055(e)(2)(B); Estate of Edgar v. Commissioner,74 T.C. 983, 986 (1980), affd. without published opinion 676 F.2d 685 (3d Cir. 1982). That rule is designed to assure that the amount received by the charity bears a reasonable correlation to the amount of the charitable contribution deduction allowed to the estate. H. Rept. No. 91-413 (1969), 1969-3 C.B. 200, 239-240. Section 2055(e)(3) provides a means by which certain interests which would otherwise not qualify to be deducted due to section 2055(e)(2) can be reformed in order to qualify to be deducted. Respondent argues that *333 petitioner is not entitled to a deduction under section 2055(a) as the charitable one-third of the trust did not meet the requirements of section 2055(e)(2) and was not reformed according to the requirements of section 2055(e)(3). Petitioner's main argument is that section 2055(e) is inapplicable and that it is entitled to a deduction under section 2055(a) for the value of the property that passed outright to the Thomas Foundation as a result of the severance. As appeal in this case lies to the Eighth Circuit, we are constrained to follow the precedent established in that Court. Golsen v. Commissioner,54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). The Eighth Circuit addressed the issue before us in Oetting v. United States,712 F.2d 358 (8th Cir. 1983). In Oetting, a decedent willed a portion of her estate to a trust. The trust was created to pay $ 100 a month to each of three women for the rest of their lives. Upon the death of the last surviving of the three women, the trust was to terminate and its corpus was to be distributed to five remaindermen, four *334 of which were charities. The decedent died on October 21, 1974. After an executor had been appointed to administer the estate, it was discovered that the trust's assets were $ 700,000, which would generate much more income than necessary to pay each of the three women $ 100 a month. The trustees were concerned that they would breach their fiduciary duty to the remaindermen by holding $ 700,000 in trust to generate $ 3,600 a year of income. They expected the cost of administering the trust to exceed that amount. The trustees also recognized that, if the trust was left as it was, the estate would not be entitled to an estate tax deduction for the value of the four charities' interests in the trust. In September of 1975, the trustees, the executor, and all the beneficiaries of the trust filed suit in state court seeking judicial modification of the trust. They sought authority to purchase life annuities for each of the life-income beneficiaries of the trust and to immediately distribute the remainder interests to the charities. On November 6, 1975, the state court granted the modifications sought to the trust. Pursuant to the state court decree, approximately $ 23,000 of *335 the trust's assets were used to purchase annuities for each of the life-income beneficiaries and the charitable remainder interests were immediately distributed. On January 12, 1976, the executor of the decedent's estate filed a Federal estate tax return claiming a charitable deduction of $ 558,207.92 for the amount distributed by the trust to the charities. Respondent disallowed the deduction and the estate paid the resulting deficiency and filed suit for refund in United States District Court. The district court granted the government summary judgment. It held that the postmortem amendment to the trust was ineffective in removing the interest that passed to the charities from the scope of section 2055(e) and that the estate was accordingly not entitled to the claimed charitable deduction. Oetting v. United States,544 F. Supp. 20 (E.D. Mo. 1982), revd. 712 F.2d 358 (8th Cir. 1983). On appeal, the Eighth Circuit reversed. It held that the amount received by the charities from the trust had "passed to them from the decedent within the meaning of section 2055(a)(2) and therefore qualifies for the charitable deduction from the estate tax." Oetting v. United States,712 F.2d at 363. *336 The court analyzed the case by first noting that section 2055(e) does not apply to charitable interests in split-interest trusts where the charitable interest is severed from the balance of a trust as the result of an action to enforce inheritance rights.[3] It reasoned that the trustees had acted to sever the charities' interest in the trust in order to carry out their fiduciary duties, and that their action was therefore legally equivalent to a will contest to enforce inheritance rights. The court concluded its analysis by recognizing that, as a result of the severance, the charities had already received the property that represented their interest in the trust so that it was no longer subject to diversion for a noncharitable purpose. *337 We interpret Oetting as standing for the proposition that a severance action initiated by a trustee of a split-interest trust removes a charity's interest in the trust from section 2055(e) if: (1) the severance was initiated by the trustees in order to carry out his fiduciary duty to beneficiaries of the trust, and (2) the severance results in the separation of the property representing the charity's interest in the trust from the balance in that property. The task before us is therefore to determine whether those two requirements are met under the facts of this case. In the case before us, the severance clearly resulted in the separation of the property representing the Thomas Foundation's interest in the trust from the balance of the trust so that no noncharitable entity retains an interest in that property. We found as a fact that the severance resulted in the separation of the noncharitable remaindermen's interest in the charitable one-third of the trust from the balance of that one-third. As in Oetting, the Thomas Foundation received direct ownership, in fee, of the balance *338 of the property from that one-third of the trust. We are therefore left to decide whether the severance was initiated by the Bank to carry out its fiduciary duty to the beneficiaries of the trust. Respondent argues that the Bank initiated the severance to salvage petitioner's estate tax charitable deduction, rather than to carry out its fiduciary duty to the beneficiaries. We disagree. The bank officer who managed the trust, Warren A. Jennings, testified as to the Bank's motive for bringing the severance action. We found his testimony to be forthright and credible. In his testimony, he explained the importance of Federal farm price support payments to the operation of Thomas Farm. He testified that "without the price support government programs, the farmer can't make it * * *." When asked why the Bank brought the severance action, he testified as follows: Well, the main reason was we would then be two entities. * * * We would be allowed to have two $ 50,000 limitations, rather than just one, and over the life of that trust that -- you know, that is quite a thing. You know, a lot of money would be involved over the life of 46 more years we have got in the trust. When *339 asked what benefits the Bank believed would be gained from the severance, Jennings testified simply "Maximize the income for the beneficiaries." Although Jennings candidly admitted that respondent's challenge to petitioner's charitable deduction was a factor in his decision, he stressed that "My main thing was the fact that for the next 46 years, we would be two entities rather than one entity." In these circumstances, we are satisfied that the Bank initiated the severance action to carry out its fiduciary duty to the beneficiaries of the trust. [4] See Riegler v. Riegler,262 Ark. 700, 553 S.W.2d 37, 40-41 (1977); Hardy v. Hardy,217 Ark. 296, 230 S.W.2d 6, 9 (1950); Sorrells v. Childers,129 Ark. 149, 195 S.W. 1, 2 (1917). *340 We are unconvinced by respondent's argument that this case is not controlled by Oetting due to the fact that the severance here occurred after petitioner's Federal estate tax return was filed while the severance in Oetting occurred before that estate's Federal estate tax return was filed. The court in Oetting focused on whether the severance was initiated by a trustee in order to carry out his fiduciary duty to beneficiaries of a trust, not whether the severance was made before or after the estate's Federal estate tax return was filed. Oetting v. United States,712 F.2d at 363. See also Estate of Strock v. United States,655 F. Supp. 1334 (W.D. Pa. 1987) (allowing charitable deduction for interest severed after original return was filed). We are equally unpersuaded by respondent's argument that section 24.1(h)(1), Temp. Estate Tax Regs., 40 Fed. Reg. 58853 (Dec. 19, 1975), prevents the deduction of the contribution at issue. That section, which was adopted on December 19, 1975, sets forth two situations in which interests that would otherwise not be deductible under section 2055(a) due to section 2055(e)(2)(A) can *341 be deductible. Respondent points to the fact that the section states that it does not apply if the two situations are met as a result of "an amendment of a dispositive provision of the governing instrument occurring since the date of death of the decedent." (Emphasis added.) Respondent argues that the section implies that an interest cannot be made deductible by a severance occurring after a decedent's death. [5] The Eighth Circuit opinion in Oetting establishes that an interest can be made deductible by a severance occurring after a decedent's death. In that case, as in the case before us now, the severance of the charitable interest occurred after a decedent's death. See also Estate of Strock v. United States, supra at 1340. Although respondent cites our decision *342 in Estate of Edgar v. Commissioner, supra, in support of his position, we believe that the facts before us now are clearly distinguishable from the facts of that case. In Estate of Edgar, a decedent's property passed to a split-interest trust in which noncharitable beneficiaries had an income interest and charitable beneficiaries were entitled to the remainder. A state court ruling entered after the decedent's death established that the noncharitable beneficiaries were entitled only to the income of the trust and that the trustee had no power to invade the trust principal for their benefit. The estate argued that it was entitled to a deduction under section 2055(a) for the value of the charities' remainder interest. We disagreed, reasoning that the trust remained a split-interest trust even after the state court ruling. Both charitable and noncharitable beneficiaries retained interests in the trust's property, and the charities' remainder interest was therefore required to be in one of the forms provided by section 2055(e)(2)(A) in order to be deductible. As we concluded that petitioners had conceded that the remainder was not in one of those forms, we held *343 that the estate was not entitled to a deduction for it. That reasoning does not apply in this case. Due to the severance that occurred here, no noncharity shares an interest in the property that was distributed directly to the Thomas Foundation. We accordingly hold that petitioner is entitled to a charitable deduction for the value of the property that passed to the Thomas Foundation as a result of the severance. [6]
Amount of Deduction
The parties have stipulated that the value of one-third of Thomas Trust was $ 921,834 when Thomas died. We found that $ 93,057.64 was used to pay the noncharitable remaindermen the present value of their interest in one-third of the trust and that the balance of the one-third was distributed to the Thomas Foundation. We accordingly hold that petitioner is entitled to an estate tax charitable deduction for the $ 828,776.36 difference between those two amounts. To reflect the foregoing, Decision will be entered under *344 Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect as of the date of the decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. The parties agree that this reduction is proper if petitioner is denied a deduction for the present value of the Thomas Foundation's interest in Thomas Farms, Inc. ↩
3. See Flanagan v. United States,810 F.2d 930 (10th Cir. 1987) (holding section 2055(e) inapplicable to property received directly by charity as a result of will contest); Northern Trust Co. v. United States, an unreported case ( N.D. Ill. 1977, 41 AFTR2d 78-1523, 78-1 USTC par. 13,229) (holding section 2055(e) inapplicable to amount received by charity as a result of will contest). Cf. First National Bank of Fayetteville v. United States,727 F.2d 741 (8th Cir. 1984) (holding section 2055(e)↩ interest in property had been extinguished by death of wife following her election to take against will). 4. When faced with similar facts in Oetting, the Eighth Circuit recognized that the trustee that initiated the severance action in that case hoped that estate taxes would thereby be reduced. Oetting v. United, States,712 F.2d 358, 361 (8th Cir. 1983). The court nevertheless accepted the trustee's assertion that it had initiated the action to fulfill its fiduciary duty. See also Estate of Strock v. United States,655 F. Supp. 1334, 1335, 1340 (W.D. Pa. 1987) (recognizing that estate's attempt to reform will was motivated, in part, to avoid sec. 2055(e)↩ but nevertheless allowing deduction). 5. We recognize the fact that the section is not directly applicable here for a number of reasons. First, it refers to interests that are not deductible due to sec. 2055(e)(2)(A). Respondent argues that the interest at issue is not deductible due to sec. 2055(e)(2)(B↩). Second, it purports to apply to decedents who died prior to January 1, 1976. Thomas died on November 18, 1982. 6. As we have held that sec. 2055(e) does not apply due to the severance, we need not address petitioner's alternate argument that sec. 2055(e)↩ does not apply due to the remoteness of the remaindermen's interest.