ESTATE OF Forrest J. JOHNSON,
Deceased, Karl Wiesenburg,
Executor, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. S89–0091(R).

United States District Court,
S.D. Mississippi, S.D.

July 19, 1990.

Roland J. Mestayer, Jr., Pascagoula, Miss., for plaintiff.

William D.M. Holmes, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., Senior District Judge.

This cause is before this Court on a Motion for Summary Judgment by the plaintiff, Karl Wiesenburg, Executor of the Estate of Forrest J. Johnson, and a Cross–Motion for Summary Judgment by the defendant, United States of America.

### Facts

The plaintiff, Karl Wiesenburg, handled the legal affairs of the decedent, Forrest J. Johnson, from 1952 to the date of his death.

In the course of this representation, the plaintiff prepared the decedent's will which was executed on November 19, 1980.

Forrest J. Johnson died on January 17, 1984, and his will was admitted to probate on January 28, 1984.

The pertinent parts of the subject will are:

### I.

I give, devise and bequeath all my estate, real, personal and mixed, to Patrick John Wilson, Michael Gerkin (Father Columban), and Milton Hill as trustees for the trust purposes set out herein. In event of the death of any one of the trustees named herein the surviving trustees or trustee shall appoint a substituted trustee or trustees.

### II.

The purposes of the trust are as follows:

(a) To provide and pay for the necessary maintenance, support, medical, nursing and hospital expenses, over and above the funds presently available to them, of my sisters, Verna Johnson Gerkin, Gladys Johnson and Ivan Johnson Purdy.

(b) To provide for the continued maintenance of the last resting places of my grandparents White and my grandparents Johnson in Krebs Cemetery in Pascagoula; the Johnson family burial plot in Evergreen Cemetery in Pascagoula; and the burial plot of Lena and Forrest Johnson in Crestlawn Cemetery in Ocean Springs, including the placing of fresh floral offerings on all graves each year on All Souls Day.

(c) To create a charitable trust to be known as "The Forrest and Lena Johnson Memorial Trust" established in memory of our parents, Forrest and Corrine White Johnson and Edward and Sarah Craft, to provide funds for the education of those educable persons in Our Lady of Victories Parish in Pascagoula and in the St. Elizabeth Seton Parish in Ocean Springs who wish to enter vocational training as a priest, brother or sister in the Roman Catholic Church, so long as such educable persons continue their education for such purposes.

(d) In event there is a reorganization of the parishes in Jackson County, Mississippi which would result in the merger, change or abolition of the parishes named in the will, then my trustees are directed to administer the trust as herein provided for the purposes herein set out to eligible educable persons of the Roman Catholic Parishes within the boundaries of Jackson County, Mississippi. If all of the Roman Catholic Parishes in Jackson County, Mississippi are abolished, this trust shall not terminate but my trustees shall then pay one-half of the annual income of the corpus of the trust, less the ten percent to be reinvested, to the organization in which the Sisters of the Most Holy Sacrament belong, the present headquarters of which are in Lafayette, Louisiana; and the remaining one-half to the Benedictine Order at Cull-

man, Alabama to be used by such orders for the vocational training and education of priests, brothers or sisters.

\* \* \* \* \* \*

IV.

I direct my trustees and the executor of my will to take the following actions:

\* \* \* \* \* \*

(b) My executor and the trustees shall create the "Forrest and Lena Johnson Memorial Trust" as a charitable trust in such manner so as to secure the maximum advantage to my estate and the trust under the applicable provisions of federal and state law.

At the time of Mr. Johnson's death, his sister, Gladys Johnson, age 91, resided in a nursing home in Lafayette, Louisiana. Ivon Johnson Purdy, age 85, resided with her son in Pascagoula, Mississippi.

Following the publishing of the Notice to Creditors, three claims were filed against the estate which had an alleged aggregate value of approximately $83,000.00. These claims were contested and ultimately were litigated.

On March 15, 1985, Mr. Wiesenburg filed a Petition for Construction of Will in the Chancery Court of Jackson County, Mississippi. By this petition the plaintiff referred to paragraphs II(a), (b) and (c) of the subject will, as previously set out, as separate trusts.

By his Order of March 18, 1985, the Chancellor appointed guardians ad litem for Gladys Johnson and Ivon Johnson Purdy and deferred construing the will.

After the guardians filed an answer with specific support recommendations the Chancellor, by Order of May 10, 1985, authorized certain expenditures on behalf of Gladys Johnson and Mrs. Purdy but postponed final construction until a hearing on the merits.

On March 27, 1986, subsequent to a Chancery Court ruling against the estate and in favor of a Dr. Adkins in the amount of $52,733.93, the plaintiff/executor filed a Second Accounting.

On February 23, 1987, the plaintiff filed a petition in Chancery Court requesting authority to create "the Forrest and Lena Johnson Memorial Foundation as a non-profit corporation." The purpose of said corporation was to carry out the directions contained in paragraph II(c) of the subject will. Approval was granted by Decree of April 29, 1987.

The Charter of Incorporation for the memorial foundation was granted on June 18, 1987.

The plaintiff asserts that the delay in establishing the charitable trust was due to uncertainties associated with appeals from claims adjudication and support payments for Mrs. Purdy. Gladys Johnson died on October 15, 1985.

On October 5, 1987, pursuant to a petition by the plaintiff/executor, the Chancery Court ordered the following to be disbursed to the Foundation: $50,000.00 from estate corpus; securities and debentures having a date of death value of $185,398.39; and $50,000.00 from estate income; making a total disbursement of $285,398.39.

By his affidavit of January 10, 1990, Mr. Wiesenburg stated that on or about October 26, 1987, he transferred $100,000.00 cash from the estate account and began to have the various stocks and securities transferred to the Foundation.

According to a letter of May 13, 1988, from the District Director of the Internal Revenue Service to Roland J. Mestayer, Jr., it had been determined that the Foundation was exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. In addition to other tax considerations, the letter set out as follows:

Donors may deduct contributions to you as provided in Code section 170. Bequests, legacies, devises, transfers, or gifts to you or for your use are deductible for Federal estate and gift tax purposes if they meet the applicable provisions of Code sections 2055, 2106, and 2522.

With the exception of a minor deviation as to the exact date, it is uncontested that in April of 1985, the plaintiff filed a federal estate tax return. The return reported a gross estate of $611,437.95, a taxable estate of $534,772.77, and an estate tax liability of $60,975.01, which was paid in full. A charitable contribution deduction was not claimed.

An amended estate tax return was filed on October 6, 1987, which set out that the estate had incurred an increase in debt, based upon the claim of Dr. Adkins of $32,733.93, and had made charitable contributions to the Foundation in the amount of $235,398.39. The $50,000.00 in estate income was not included in the charitable deduction claim.

On October 12, 1987, the plaintiff filed a claim for a full refund of the estate tax paid, plus interest. This claim was disallowed in the amount of $54,462.82 in September, 1988, resulting in the filing of the subject cause of action.

Pursuant to a Petition to Interpret Will, filed by the guardians ad litem of the sole surviving sister, Mrs. Ivon Purdy, the Chancery Court of Jackson County, Mississippi, by Order of January 11, 1989, directed that the Ivon Purdy Trust be formed and funded.

In his memorandum in opposition to the defendant's Motion for Summary Judgment, the plaintiff states that the estate securities and case to fund the Foundation were transferred while the estate was still open.

### Discussion

■ Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In *St. Amant v. Benoit*, 806 F.2d 1294, 1296–97 (5th Cir.1987).

The broad question, as stated by the plaintiff, is whether the estate of Forrest J. Johnson is entitled to an estate tax charitable contribution for the transfer of assets to the Forrest and Lena Johnson Memorial Foundation ("Foundation").

More particularly, the question is whether 26 U.S.C. sections 2055(e)(1), (2) and (3), as amended by the Tax Reform Act of 1984, should be construed to emphasize Congressional intent favoring charitable bequests or to exclude all bequests which are at variance with the procedures prescribed in the subject sections.

I. Does the will of Forrest J. Johnson clearly provide for the establishment of three separate trusts or a single "split-interest" trust?

 The plaintiff sets out in his Itemization of Facts that Forrest Johnson "wanted to set up three trust"; however, the plain language of the will in articles I and II speaks of "trust purposes" and "purposes of the trust." Nowhere in the will is there any reference to more than one trust.

The plaintiff also asserts that "[e]ach trust was to function independently of one another and to be funded with separately identifiable assets." This Court is more inclined to agree with the defendant that "[n]o amounts were determined in the decedent's will either by way of specific dollar amounts or percentages of the estate to be used to fund each of the alleged trusts."

While this Court cannot find in the language of the will a clear indication that the decedent intended that three separate trusts be created, it does not necessarily follow that a split-interest was created.

The plaintiff argues that because the will does not devise an income interest to the decedent's sisters and for grave maintenance with the remainder to religious education, it does not reflect an intent to create split-interest bequests. This interpretation is based upon the language of cases such as *Oetting v. United States*, 712 F.2d 358 (8th Cir.1983), which defines split-interest bequests as "those in which a present interest passes to a noncharitable beneficiary and a future interest passes to a charitable one." Continuing, the *Oetting* court, in discussing 26 U.S.C. § 2055(e), stated:

This statute was enacted by Congress to eliminate an abuse of the charitable deduction through the so-called 'split-interest bequest.' Such a testamentary transfer involves the bequest of an interest in property to an individual with a simultaneous bequest of an interest in the same property going to a qualified charity. Often this is accomplished by giving the income interest in a trust to an individual for life, with the remainder to charity.

*Id.* at 360.

A difficulty which this Court is faced with in the case *sub judice* is brought about by the conflict between what actually happened and what was reasonably foreseeable under the terms of the will.

Restating paragraph II(a) of the subject will, we note that it proposes "[t]o provide and pay for the necessary maintenance, support, medical, nursing and hospital expenses, over and above the funds presently available to them, of my sisters, Verna Johnson Gerkin, Gladys Johnson and Ivan Johnson Purdy." (The Court notes that subsequent pleadings indicate that "Gerkin" should be "Geerkin" and Ivan is actually "Ivon".)

Verna Johnson Geerken died on January 5, 1982, and at the time of the testator's death, Gladys Johnson and Mrs. Purdy were alive.

While this Court does not propose to explore the possible scenarios, it would not be a stretch of the imagination to visualize how extended medical care could have substantially depleted the estate.

Irrespective of what actually transpired, it seems clear to this Court that Mr. Johnson intended that his sisters be cared for and that he left the particulars in the hands of the trustees and the executor. It is therefore this Court's opinion that a split-interest bequest was intended.

This Court agrees that the will does not indicate that Foundation funding will not occur until the demise of the decedent's sisters; however, the language allows for contingencies which could have made evaluation of the charitable bequest difficult.

II. What effect should this Court give to congressional intent?

 Having found that the will in question provides for a split-interest bequest,

this Court finds it necessary to look at the intent of Congress in passing the subject legislation.

The plaintiff would have this Court focus upon 26 U.S.C. § 2055(a) which provides for a deduction for charitable bequests and cites this Court to *Estate of Strock v. United States*, 655 F.Supp. 1334 (W.D.Pa.1987), which provides a comprehensive discussion of the applicability and intent of § 2055(e).

The Court in *Strock* summarizes § 2055(e) as disallowing "deductions for charitable bequests of remainder interests which are not in one of the three permissible forms (annuity trust, unitrust or pooled income fund) listed in § 2055(e)(2)(A)." The *Strock* court continued saying that the purposes of 2055(e) "was to curb potential abuses attendant to the uses of split-interest trusts with charitable remainders." *Id.* at 1336.

Citing extensively to *Northern Trust Co. v. United States*, 41 A.F.T.R.2d (P–H) 78–1523 (N.D.Ill.1977); *Oetting v. United States*, 712 F.2d 358 (8th Cir.1983), and *First National Bank of Fayetteville v. United States*, 727 F.2d 741 (8th Cir.1984), the *Strock* court summarized:

> In the cases supporting plaintiffs' position an intervening factor occurred, which otherwise altered the terms of a will and eliminated the split-interest problem *before* an estate would have to use the relief provided in § 2055(e). These intervening factors included a will contest and subsequent settlement, a court petition based in part on concerns for fiduciary duty and a spousal election against a will. As such, these situations do not present an attempt by the estate to circumvent compliance with § 2055(e). Granted, the estates in those cases probably sought to restructure the respective wills so as to favor a charitable deduction under § 2055(a). However, we do not believe this to be a relevant consideration as the fact remains that the interests motivating the alterations were not *solely* concerned with obtaining a charitable deduction.

*Id.* at 1340.

The defendant relies heavily upon *Estate of Edgar v. Commissioner*, 74 T.C. 983

(1980), *aff'd* 676 F.2d 685 (3rd Cir.1982), which is considered and distinguished in *Strock*.

As summarized by the defendant, in *Edgar* the will bequeathed the residue of the decedent's estate to a trust which provided for the payment of interest (and principal at trustee's discretion) to the decedent's sister for life, with remainder to various charities. The petitioner in *Edgar* reasoned that because the trust fund generated enough income to fully satisfy the non-charitable interests and thus keep the residuary estate from being invaded, § 2055(e)(2) does not apply to disallow the charitable deduction.

The court in *Edgar* rejected this reasoning and held:

> The essence of petitioner's argument, thus, is that where the economic facts concerning a transfer which provides for nonqualifying beneficiaries to receive a part interest in property are such that those beneficiaries will never receive any portion of that part interest, section 2055(e) is inapplicable. We disagree. Section 2055(e)(2) was enacted in 1969, effective with respect to decedents dying after December 31, 1969 (with certain exceptions, not here relevant), Pub.L. 91–172, sec. 201(d)(1), 83 Stat. 487, 549, in order to correct perceived abuses in the charitable contributions area. One of these abuses was the manner in which trust assets might be invested: for example, maximizing income interests by investing in high-income, high-risk assets, thus enhancing the value of the income interest but decreasing the value of the charity's remainder interest. To provide a closer correlation between the charitable contributions deduction and the ultimate benefit to charity, Congress provided rules which have to be met before a gift can qualify for a deduction. H.Rept. 91–413 (1969), 1969–3 C.B. 200, 237–239. Although this specific situation may not have been regarded as abusive by Congress when it enacted this legislation, as petitioner contends, permitting economic factors to be considered would

directly contradict Congress' intent to establish specific rules in this area. It is clear that the trust document created, in legal terms, a remainder interest in favor of the charitable institutions. We hold that such an interest must in all events conform to the statutory requirements. *Id.* at 987.

Returning to the analysis in *Strock,* this Court notes, with interest, the excerpts from *Flannagan v. United States,* 810 F.2d 930 (10th Cir.1987) (referred to in *Strock* as *Estate of Parker v. United States* ) which in addressing congressional intent stated:

In enacting the charitable deduction provisions in I.R.C. § 2055 and its predecessors, Congress sought to encourage gifts to charity. *Commissioner v. Estate of Sternberger,* 348 U.S. 187, 190 n. 3, 75 S.Ct. 229, 231 n. 3, 99 L.Ed. 246 (1955); *YMCA v. Davis,* 264 U.S. 47, 50, 44 S.Ct. 291, 292, 68 L.Ed. 558 (1924). We agree with the Seventh Circuit's formulation in *Norris v. Commissioner,* 134 F.2d 796 (7th Cir.), *cert. denied,* 320 U.S. 756, 64 S.Ct. 63, 88 L.Ed. 450 (1943), that congressional intent to prefer charitable gifts to estate taxes was 'a case of absolute priority. . . . [While] loopholes should not be permitted to diminish estate tax payments by ostensibly charitable bequests which may never become effective,' we cannot blindly resolve all doubts in favor of the IRS if we are to respect legislative intent to encourage gifts to charity. *Id.* at 801.

*Id.* at 934–935.

This Court is further assisted by the opinion in *Estate of Godfrey Thomas,* para. 88,295 PH Memo TC, which was written by the same court that decided *Edgar.* In distinguishing between the two cases, the *Thomas* court stated:

In Estate of Edgar a decedent's property passed to a split-interest trust in which noncharitable beneficiaries had an income interest and charitable beneficiaries were entitled to the remainder. A state court ruling entered after the decedent's death established that the noncharitable beneficiaries were entitled

only to the income of the trust and that the trustee had no power to invade the trust principal for their benefit. The estate argued that it was entitled to a deduction under section 2055(a) for the value of the charities' remainder trust. We disagreed, reasoning that the trust remained a split-interest trust even after the state court ruling. Both charitable and non-charitable beneficiaries retained interests in the trust's property, and the charities' remainder interest was therefore required to be one in one of the forms provided by section 2055(e)(2)(A) in order to be deductible. As we concluded that petitioners had conceded that the remainder was not in one of those forms, we held that the estate was not entitled to a deduction for it. That reasoning does not apply in this case. Due to the severance that occurred here, no noncharity shares an interest in the property that was distributed directly to the Thomas Foundation.

Finally, this Court finds itself in agreement with the plaintiff in his analysis of *Strock* as holding that the appropriate measurement date is not the date of the death but rather the date that the decedent's estate is closed.

As it is uncontested that the transfer of the estate securities and cash occurred while the subject estate was still open, the reasoning in *Strock* would seem, a fortiori, to apply herein.

Conclusion

This Court is of the opinion that due to the actions of the executor, guardians ad litem, and trustees under the continuing direction and supervision of the Chancery Court, the estate funds which were transferred to the Foundation are subject to no other noncharitable interests.

Furthermore, it seems uncontestable that these agents and agencies were clearly acting in furtherance of the obvious eleemosynary intent of the testator and consistent with congressional intent regarding charitable bequests.

Having compared and contrasted the authorities cited by the parties in context of the facts herein, this Court further con-

cludes that 26 U.S.C. § 2055(e) does not apply.

IT IS THEREFORE ORDERED AND ADJUDGED that the plaintiff's Motion for Summary Judgment is hereby GRANTED and the defendant's Cross–Motion for Summary Judgment is DENIED.

SO ORDERED AND ADJUDGED.