ESTATE OF Forrest J. JOHNSON, Deceased, Karl Wiesenburg, Executor, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant.

No. 90–1808.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1991.

George Phillips, U.S. Atty., Jackson, Miss., Kenneth W. Rosenberg, Kenneth L. Greene, Gary R. Allen, Chief Appellate Sec., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Roland J. Mestayer, Jr., Pascagoula, Miss., for plaintiff-appellee.

Before WISDOM, KING, and DUHÉ, Circuit Judges.

WISDOM, Circuit Judge:

This is an appeal from the district court's summary judgment reversing the government's denial of a tax refund to the estate of Forrest J. Johnson for its contribution to a charitable trust set up in accordance with the decedent's will. Because the charitable trust in question does not comply with any of the limited requirements the Internal Revenue Code provides for deductions we REVERSE the district court's decision and uphold the denial of a tax refund to the decedent's estate.

## I. BACKGROUND

Mr. Johnson died in January 1984 and left a will, executed in November 1980, that provided for a trust with three purposes: to support his three sisters, two of whom were living at the time of his death; to maintain the graves of Johnson family members; and to create a charitable trust to pay for religious education in certain Catholic parishes in Mississippi.[1]

---

1. The decedent bequeathed his entire estate to be held in trust for the following purposes:

[F]or the necessary maintenance, support, medical, nursing and hospital expenses, over and above the funds presently available to them, of my sisters, Verna Johnson Gerkin [sic], Gladys Johnson and Ivan [sic] Johnson Purdy.

[F]or the continued maintenance of the last resting places of my grandparents ...; the Johnson family burial plot ...; and the burial plot of Lena and Forrest Johnson....

The estate filed a federal estate tax return, making no deduction for a charitable bequest, in April 1985. One of the decedent's remaining sisters, whose medical care the executor had been using estate funds to support, died in October 1985 (before any trust had been formally established). In February 1987, nearly two years after the estate tax return was filed, the estate asked the chancery court for authority to establish the "Forrest and Lena Johnson Memorial Foundation", a nonprofit corporation that would carry out the decedent's charitable bequests. The chancery court granted such authority in April 1985, and the foundation was incorporated under Mississippi law in June of that year. The court later granted a petition to fund the foundation with assets worth $235,398.30 at the time of the decedent's death (almost half of the after-tax estate), plus $50,000 in income earned by the estate in the intervening years. The transfer of funds was made in October 1987. In the same month the IRS declared the foundation exempt from federal taxation under § 501(c)(3) of the Internal Revenue Code, and the executor claimed a refund of $54,642.82 of federal estate taxes based primarily on the charitable donation of $235,398.39 to the foundation. The IRS denied that claim insofar as it reflected the charitable bequest.

In January 1989, the chancery court granted a request of the guardians ad litem of Ivon Johnson Purdy, the decedent's only living sister, to interpret the will to establish three separate trusts for three separate purposes (support of surviving sisters, grave maintenance, and education of future Catholic priests and nuns). The court also directed the executor to prepare an actuarial appraisal of maintaining the Johnson family graves according to the decedent's will. There is no record that such an appraisal was ever made. Two months later the Court approved the establishment of the Ivon J. Purdy Trust, funded with $100,000 from the decedent's estate to pay for the further support of Mrs. Purdy, an invalid with little money of her own. At her death, any remaining funds in the trust would roll into the charitable foundation. The remainder of the estate remains undevoted to either trust.

In February 1989, the estate brought this suit to receive the estate tax refund denied by the IRS. The estate moved for summary judgment, arguing that the decedent's will provided for three separate trusts and that therefore the will created no split interest bequest. The United States argued that a prohibited split interest trust had been made under the will. The district court held that the will provided for a split interest trust but that the provisions of Section 2055(e)(2)(A) were inapplicable here. On August 6, 1990, the district court therefore granted the motion of the estate for summary judgment, denied the motion of the United States, and entered judgment in favor of the estate. 742 F.Supp. 940. The United States appeals from that judgment.

## II. SPLIT INTEREST BEQUEST

26 U.S.C. § 2055(e)(2) of the Internal Revenue Code disallows estate tax deductions where a trust or estate creates a "split interest" by bequeathing interests in the same property to both charitable and noncharitable beneficiaries. Congress passed this law in 1969 to prevent abuse of the tax code through trusts that provide for the unrestricted support of noncharitable life interests at the expense of residual bequests (with correspondingly large tax deductions) to charitable foundations. The law forces an estate to distinguish and value accurately the portions of an estate going to charitable and noncharitable recipients. Congress granted a limited exception to this harsh rule with § 2055(e)(2)(A), which allows deductions for split remainder interests in the form of a charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund. Where any of these three instruments are used the IRS can determine the total cost of the bequest to the noncharitable legatee,

To create a charitable trust ... to provide funds for the education of those ... who wish to enter vocational training as a priest, brother or sister in the Roman Catholic church....

and then accurately separate the charitable and noncharitable claims on the estate.

The district court correctly held that the will of Forrest J. Johnson must be read to mean that "a split interest bequest was intended." It unambiguously designates the creation of one trust to serve three separate purposes, only one of which involves a charitable bequest. The will lists "the purposes of *the* trust" (emphasis added), and establishes no grounds for separating the open-ended, noncharitable bequests to the decedent's surviving sisters and toward grave maintenance from the charitable bequest. All three are to be funded from the same property in the decedent's estate. This case involves a classic split interest, where interest "in the same property" passes to both charitable and noncharitable beneficiaries. *See* § 2055(e)(2).

## III. APPLICABILITY OF § 2055(e)

We disagree with the district court's holding that in the light of the congressional intent to favor charitable bequests § 2055(e) is inapplicable to this case. The estate's claim for a refund fails because it does not satisfy any of the specifically prescribed methods of reforming a split interest trust.

The appellee relies primarily on one 8th Circuit case allowing a tax deduction where a split interest problem not reformed according to § 2055 was resolved so that the entire estate could be accurately and permanently separated between charitable and noncharitable beneficiaries. In *Oetting v. United States*[2], a split interest that failed to comply with § 2055(e)(2) was granted a tax deduction because the bequests to noncharitable beneficiaries—three life interests of $100 a month—could be satisfied by the purchase of three annuities, thus freeing a much larger charitable bequest from the split interest problem. The government argued in *Oetting*, as it does here, that deductions should be denied where the executor or trustee makes charitable donations solely to avoid paying estate tax. We have difficulty in applying a motive test to the decisions of executors and trustees, who cannot be blamed for avoiding taxation of estates they represent when, as in this case, their fiduciary obligations often require the charitable donations they make. The true distinction between *Oetting* and this case is that in *Oetting* the amount payable to the noncharitable beneficiaries was limited, and could be firmly assessed and separated from the charitable bequest. In *Oetting* the split interest could have been reformed in accordance with § 2055(e)(2) as a charitable annuity remainder trust. In this case the executor could not possibly conform the trust with § 2055(e)(2) while still complying with the terms of the will.

The first stated purpose of the trust is to provide "the necessary maintenance, support, medical, nursing, and hospital expenses, over and above the funds presently available to them, of my sisters...." There is no upward limit on the amount the trustees might be required to spend to support the decedent's sisters (an amount which, given the unpredictable costs of medical care for the elderly and the relative poverty of the decedent's sisters, could have been—and could yet be—very great). Although the trustees could buy a contract to satisfy their duties of grave maintenance (they do not seem to have done so), there is no way for either the trustees or the IRS to assess the sum of noncharitable bequests until the last sister dies; until that time the full amount of the charitable bequest will also remain uncertain. Although a firm amount *was* set aside for the Purdy Trust, and an equally firm amount was placed irrevocably into the charitable trust, there is no compliance with this test, as stated in *Oetting:* "the property in which [the noncharitable beneficiary] has an interest (i.e., the maximum possible amount of [her support]) must be capable of being measured and severed from the solely charitable property in the residuary estate...." *Oetting*, 712 F.2d at 362, quoting Revenue Ruling 83–20.

The appellee cites other cases allowing deductions if a settlement of claims on an estate has effected a result economically identical to one of the forms sanctioned by

2. 712 F.2d 358 (8th Cir.1983).

§ 2055(e)(2). Such settlements, between charitable and noncharitable beneficiaries with split interests in the same property, terminate the estate's obligations to both parties through a permanent severance of the *entire* property.[3] In this case there is no way to divide the entire estate between the charitable and noncharitable beneficiaries because their interests continue to conflict. In spite of the chancery court-approved severance of trusts, accurate measurement of the liability for supporting Mrs. Purdy remains impossible, and there is no justification for bending the admittedly stiff rules of § 2055(e).

As the district court observed, Congress intended to encourage charitable gifts. Abuses developed. In 1969 Congress concluded to prevent certain abuses by adding § 2055(e)(2) to the Internal Revenue Code. In broad language, § 2055(e)(2) disallows a charitable deduction when charitable and noncharitable interests "in the same property" pass "from the decedent" unless the transfer is a charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund. When this section led to harsh results in some cases, Congress enacted § 2055(e)(3) in 1974 to give temporary relief by allowing an otherwise nondeductible bequest to be deductible if the will was amended so that the bequest would qualify as one of the three specified exceptions provided for in § 2055(e)(2). In 1984, after several extensions of this rule, Congress made it permanent by enacting § 2055(e)(3) detailing requirements of a "qualified reformation" of a "reformable interest" into a "qualified interest".

We consider the pertinent statutory language unambiguous. There is no justification for a judicial divination of an unstated congressional intent to make an exception for the bequest in this case. We REVERSE the district court's decision to grant the tax deduction to the estate.

---

**3.** *See First National Bank of Fayetteville, Arkansas v. United States,* 727 F.2d 741 (8th Cir.1984); *Estate of Strock v. United States,* 655 F.Supp. 1334 (W.D.Pa.1987); *Northern Trust Co. v. United States,* 41 A.F.T.R.2d (P–H) 78–1523 (N.D.Ill. 1977).